## SAUNDERS v. HORNSBY.
### No. 5558.

Court of Civil Appeals of Texas. Amarillo.
June 21, 1943.

Rehearing Denied Sept. 6, 1943.

Sturgeon & Sturgeon, of Pampa, for appellant.

Clayton & Bralley, of Amarillo, and Walter E. Rogers, of Pampa, for appellee.

STOKES, Justice.

The record in this case shows that appellant, J. M. Saunders, has been the owner of Section 40, Block 3, I. & G. N. Ry. Co. Surveys in Gray County since about 1915. In January 1922 he executed an oil and gas lease on the Northwest Quarter of the Southwest Quarter, being forty acres, to Gulf Production Company, retaining the usual 1/8 of the production as a royalty. In June 1924 he sold and conveyed 1/2 of his royalty interest to C. J. Olmstead and appellee, Roy Hornsby. Thereafter Olmstead and appellee sold 1/2 of their interest to Harlan Bros. By the lease and these conveyances the Gulf Production Company became the owner of 7/8, or 56/64, appellant 1/16, or 4/64, Harlan Bros. 2/64, and appellee and Olmstead 2/64 of all of the oil and gas in and under the forty-acre tract. On April 12, 1929, for a consideration of $400, appellee Hornsby conveyed back to appellant 1/64 of the 1/8 royalty interest, which constituted 1/512 of all of the oil and gas in and under the forty-acre tract. This last conveyance had the effect of dividing the royalty interest of 1/8 into fractions of sixty-fourths and dividing the ownership of that interest in such manner as that appellant was the owner of 33/64, Harlan Bros. 16/64, Olmstead 8/64, and appellee Hornsby 7/64 of the 1/8 royalty interest retained by appellant in the original oil and gas lease.

The Gulf Production Company developed a producing oil well on the land in 1929. Appellee's whereabouts being unknown, the lessee had some correspondence with appellant concerning a proper division order and distribution of the royalty interest, which developed the contention that ultimately caused the institution of this suit. Appellant's contention was that, when appellee conveyed to him the 1/64 of the royalty interest, it was the intention of both parties that he would convey all of the interest owned by him at that time, which was 8/64 of the 1/8 royalty. It was finally arranged between appellant and F. J. Adams, who seems to have been the representative of both the Gulf Production Company and the Gulf Pipe Line Company, to which the production was being sold, that the interest in the royalty which apparently was still owned by appellee would be paid to appellant and that appellant would, at a later date, adjust with appellee the controversy concerning the alleged mutual mistake in the mineral deed. This arrangement continued until August 14, 1940, when appellee Hornsby wrote a letter to the Gulf Pipe Line Company, in which he made claim for his portion of the royalty that had accumulated. The pipe line company informed appellant of the contention of appellee and stopped payment of all royalty to appellant pending an adjustment of the controversy. Being unable to adjust the matter by negotiation, appellant filed this suit to correct and reform the mineral deed executed in 1929 by appellee, so that it would convey to him 1/64 of all of the oil and gas in and under the forty acres of land, being all of the interest owned by appellee, instead of 1/64 of the 1/8 royalty interest. He further set up title to the interest of appellee under the ten-year statute of limitations, Article 5510, R.C.S.1925, and further alleged that on January 5, 1942, at a regular term of the court a judgment by default was entered in his favor, and thereafter, at the same term, appellee filed a motion to set aside the default judgment and filed his application and bond for removal of the case to the United States District Court for the Northern District of Texas at Amarillo. The court sustained the motion and ordered the case transferred to the Federal Court. Upon a hearing in that court the case was remanded to the District Court of Gray County. At the October term of the district court appellant filed a motion seeking to have the original judgment by default reinstated. The motion being overruled, the case proceeded to trial before the court without the intervention of a jury and resulted in a judgment in favor of appellee, to which appellant duly excepted and from which he has perfected an appeal to this Court.

Appellant presents five points of error which we think may be reduced to two controlling questions. He contends, first, that the court erred in holding that he failed to establish title under the ten-year statute of limitation, Article 5510, R.C.S.,

to the 7/64 of the 1/8 royalty interest retained by appellee when he executed the mineral deed, and, secondly, that the court erred in refusing to reinstate the default judgment entered in his favor on January 5, 1942, after the cause had been removed to the Federal Court and remanded to the District Court of Gray County.

Under the first contention appellant asserts three acts of occupancy and adverse possession, namely, (a) that at all times after the original oil and gas lease was executed he was in possession of the land, using it as a pasture for his livestock; (b) that he occupied and enjoyed the royalty interests in the oil and gas produced from the forty acres and now claimed by appellee, by executing the division order under which the pipe line company was authorized and instructed to pay the royalty to him and by collecting the proceeds thereof; and (c) by paying the taxes on the royalty interest here in dispute, during the entire term of more than ten years after the mineral deed was executed by appellee conveying back to appellant 1/64 of the royalty interest. He contends further that notice of his adverse occupancy of the land was visited upon appellee by a letter which appellant testified he wrote to appellee in March 1930, informing him of his occupancy and claim to the royalty interest, and also by a letter written to appellee by the Gulf Production Company on March 3, 1930.

■ We can not agree with appellant that his occupancy and possession of the land in the manner reflected by the testimony were such as to constitute adverse possession of the mineral interest here involved. The most that can be said of the testimony in that respect is that appellant occupied the surface of the land during all of the time after the original oil and gas lease was executed. Within a few months after he executed the lease, the lessee began the drilling of a well and within due time discovered oil and gas in paying quantities. Appellant recognized the interest of the lessee during all of the time and collected not only his 33/64 of the royalty, but also the 7/64 which belonged to appellee. At no time after the execution of the oil and gas lease did appellant acquire possession of the mineral interests conveyed by the oil and gas lease. Possession and occupancy of the mineral interests in the land were at all times held by the lessee under the oil and gas lease. Appellant never at any time drilled or attempted to drill any well or take possession of any portion of the severed estate, consisting of the mineral properties, in any manner other than to occupy and use the surface as a portion of his pasture lands. It has long been the established law in this State, as well as in every other jurisdiction in this country, as far as we know, that such possession of the surface is in no sense possession of the mineral interests in an estate which has been severed by the execution of a lease or conveyance such as that evidenced by the oil and gas lease here involved. Wallace v. Hoyt, Tex.Civ. App., 225 S.W. 425; Green v. West Texas Coal Mining & Developing Co., Tex.Civ. App., 225 S.W. 548; Grissom v. Anderson, 125 Tex. 26, 79 S.W.2d 619; Henderson v. Chesley, Tex.Civ.App., 229 S.W. 573; Lyles v. Dodge, Tex.Civ.App., 228 S.W. 316.

■ Appellant further contends under these assignments of error that by executing the division order by which the pipe line company was authorized and instructed to pay to him the 7/64 of the 1/8 royalty interest, of which appellee was the record owner, and the receipt and collection by him of that interest constituted an appropriation of a like portion of the oil and gas in place and was sufficient to constitute adverse possession of it. We do not think it can be said that such acts of appellant were, in any sense, an appropriation of that portion of the estate owned by appellee. By executing the division order and collecting the 7/64 of the royalty belonging to appellee, appellant merely converted to his own use the oil and gas that had already been produced by the Gulf Production Company and did not affect that which remained in the ground, which is the subject matter of this case.

■ Nor do we think payment of the taxes constituted an adverse occupancy of the mineral interest as contended by appellant. The testimony does not show that this particular interest was separately rendered for taxes by appellant, but in any event, payment of the taxes by him was only evidence that he was claiming the land and in no sense, within itself, constituted an appropriation of it. Bishop v. Paul, Tex.Civ.App., 217 S.W. 435. Moreover, under Article 5510, under which appellant claims, the payment of taxes does not constitute an essential element of adverse possession. Gotoskey v. Grawunder, Tex.Civ.App., 158 S.W. 249.

Appellant argues that if each of these acts separately did not constitute adverse possession, then all of them combined were sufficient to do so. We know of no principle of law under which either of them would support or add anything to the others. Each of them was clearly insufficient within itself, and we are unable to conceive of any process by which a combination of them would add to their strength.

There is another feature of the testimony which amply supports the judgment of the court denying appellant recovery under the ten-year statute of limitation. It has reference to the intention entertained by him during all of the ten or eleven years in which he claims he held adverse possession. On March 11, 1940, F. J. Adams, representing the Gulf Pipe Line Company, wrote a letter to appellant in which he informed appellant that appellee had notified the company that he claimed the 7/64 of the royalty interest which is here in dispute and stated to appellant that, on account of appellee's claim, the company would have to discontinue payments to appellant of any of the royalty until the matter had been adjusted between him and appellee. In reply to that letter, appellant wrote the company a letter on April 16, 1940, in which he denied he had collected royalty on the 7/64 interest and referred to the Deed Records of Gray County as showing that he owned only 33/64 of the royalty instead of 40/64, which would include the 7/64 here involved, and that he had collected royalty only on his 33/64 interest therein. He protested, therefore, the expressed purpose of the pipe line company to withhold payment of his royalty on the 33/64 which he said was all he owned. While that letter was written after the ten-year period in which appellant contends he had perfected title by limitation had expired and therefore would not constitute a relinquishment or release of title to any portion of the property acquired by limitation during that time, it plainly showed that, prior to the time he wrote the letter, he had never claimed to own the 7/64 interest in the royalty. His attempts to occupy it in the manner in which he asserts he did were therefore not accompanied by a claim of right nor by an intention on his part to claim it as his own. Furthermore, throughout the entire ten or more years, he had collected that particular royalty interest in expressed recognition of appellee's record ownership of it and with the understanding that he would adjust the mutual mistake he claimed was made when the mineral deed was executed in which appellee conveyed back to him 1/64 of the royalty interest. Our courts have consistently held that, without an intention to claim land as his own, one possessing it can never acquire limitation title to it. Kirby Lumber Co. v. Conn, 114 Tex. 104, 263 S.W. 902. According to the testimony, including appellant's own statements, the only claim ever asserted by him relative to the royalty interest here involved was that a mutual mistake had been made in the mineral deed executed by appellee in 1929, whereby he conveyed to appellant 1/64 of the royalty instead of 8/64, being all of the interest owned by appellee at that time. Not having filed his suit to reform the mineral deed within four years after it was executed and delivered to him, he was barred from that recovery by our four-year statute of limitation, Article 5529, R.C.S.1925. Cleveland State Bank v. Gardner, Tex.Com.App., 286 S.W. 173. Indeed, appellant makes no complaint as to the action of the court on that phase of the case made by his pleadings.

The only notices which appellant claims ever to have been given to appellee concerning any claim being asserted by him referred to the alleged mutual mistake. He testified he wrote to appellee in March 1930, asserting his claim but, in explaining the contents of the letter, he said that it referred to the title as shown by the abstract and requested appellee to "straighten it out." Appellee testified he never received the letter and there was no testimony to the effect that he did receive it, but even if it had been received by him, it referred only to the alleged mutual mistake and contained no notice whatever that appellant was then asserting any claim of present ownership in the royalty interest here involved, or a purpose to perfect a title to it by limitation. Appellant contends further in this connection that appellee had ample notice of his claim through a letter written to appellee by the Gulf Production Company, dated March 3, 1930, and which we have already mentioned. Appellee received that letter but it also had reference only to the alleged mutual mistake which appellant claimed had been made in executing the mineral deed and had no reference whatever to any other adverse claim which appellant was then asserting to the mineral estate owned by appellee. Even if appellant's occupancy

of the land had been such as is required by the law to perfect a title by limitation, the record is barren of any notice, either actual or constructive, to appellee of any such claim and for that reason alone appellant was not entitled to recover upon his claim under the ten-year statute of limitation.

We are not impressed with appellant's second contention which has reference to the action of the court in refusing to reinstate the default judgment that had been rendered in his favor at a former term of the court and prior to the time the case was transferred to the Federal Court. The setting aside of that judgment amounted to the granting of a new trial at that term, and the law is well settled that the court was without authority to enter another judgment at a subsequent term without a trial. Smith v. Thornton, 119 Tex. 344, 29 S.W.2d 314. The court had power to set the judgment aside at the term at which it was entered and after granting appellee's motion to set it aside, the case rested upon the docket as though no judgment had been entered.

We have carefully examined all of the assignments of error and contentions presented by appellant and, in our opinion, the court below entered the proper judgment under the testimony in the case. Its judgment will therefore be affirmed.