**CHAMPION PAPER & FIBRE COMPANY,**
**Appellant,**

**v.**

**H. R. WOODING et ux., Appellees.**

**No. 3592.**

Court of Civil Appeals of Texas.

Waco.

Jan. 29, 1959.

Rehearing Denied Feb. 26, 1959.

Vinson, Elkins, Weems & Searls, M. C. Chiles, Houston, B. F. Whitworth, Jasper, for appellant.

Joe H. Tonahill, John H. Seale, Jasper, for appellees.

TIREY, Justice.

This action is one in trespass to try title. At the conclusion of the testimony the court overruled plaintiff's motion for an instructed verdict. Absent the burden of proof clause, the court submitted the following issues to the jury:

"1. Do you find * * * that plaintiff, or those through whom it claims, either themselves or through a tenant or tenants, have held peaceable and adverse possession of the 16.14 acres of land in controversy, cultivating, using or enjoying the same, or any part thereof, and paying taxes thereon and claiming it under a deed or deeds duly registered, for any period of five consecutive years between May 5, 1942 and December 27, 1954?"

to which the jury answered "No."

"2. Do you find * * * that the plaintiff and those through whom it claims, either themselves or through a tenant or tenants, have held peaceable and adverse possession of the 16.14 acres of land in controversy, cultivating, using or enjoying the same for any period of ten consecutive years between January 4, 1936 and December 27, 1954?"

to which the jury answered "No."

"3. Do you find * * * that Frank Graham had and held peaceable and adverse possession of the 16.14 acres of land in controversy, cultivating, using or enjoying the same for any period of time?"

to which the jury answered "Yes."

"4. When do you find * * * that the peaceable and adverse possession by Frank Graham, if any, originated?"

to which the jury answered "Year 1942."

"5. When do you find * * * that the peaceable and adverse posses-

sion of Frank Graham, if any, terminated?"

to which the jury answered "Year 1949."

"6. Do you find * * * that there was privity of possession between Frank Graham and H. R. Wooding?"

to which the jury answered "Yes."

"7. Do you find * * * that H. R. Wooding had and held peaceable and adverse possession of the 16.14 acres of land in controversy, cultivating, using or enjoying the same for any period of time?"

to which the jury answered "Yes."

"8. When do you find * * * that the peaceable and adverse possession by H. R. Wooding, if any, originated?"

to which the jury answered "Year 1949."

"9. Do you find * * * that the peaceable and adverse possession of H. R. Wooding, if any, continued, if it did, up until the time when this suit was filed?"

to which the jury answered "Yes."

The court overruled plaintiff's motion for judgment notwithstanding the verdict, and granted defendants' motion, and decreed that plaintiff take nothing by its suit against the defendant Wooding, and divested the title out of plaintiff and vested it in defendants, Mr. and Mrs. H. R. Wooding. Plaintiff seasonably filed its amended motion for new trial, and it being overruled, perfected its appeal to the Beaumont Court of Civil Appeals, and it is here on transfer order of our Supreme Court. The decree specifically named each of the other defendants named in the suit, and recited that each of said defendants wholly made default after being duly cited to appear and answer, and further held that such defendants had no title or possession or claim to the land in controversy, and decreed that "said defend-ants are therefore divested of any claim, title, or possession to the land in controversy," and they did not appeal.

Appellant assails the judgment on what it designates as 24 points. Appellant has briefed its points 1 through 13 under one argument. These points present substantially the following major propositions: (1) The court erred in refusing appellant's motion for an instructed verdict; (2) in refusing appellant's motion for judgment notwithstanding the verdict; (3) in refusing appellant's first amended motion for new trial, because under appellees' first amended answer, their claim to the 16.14 acres of land is by adverse possession under the ten-year statute of limitations, and there is no evidence of such possession and claim to said land as required by statute, and by reason thereof the court erred in entering judgment in favor of appellees and against appellant; (4) there was no evidence to tender Issues Nos. 3, 4 and 5 of the court's charge, and that the evidence submitted is insufficient to sustain the answers of the jury thereto, and that the answers of the jury to each of such issues is against the greater weight and preponderance of the evidence; (5) the court erred in refusing to submit to the jury appellant's Requested Special Issues Nos. A, B, C, D, E, F, G, H and I.

A statement is necessary. Appellant acquired the record chain of title to this 16.14 acres of land, with adjoining lands in the Hart Survey, from Miller-Vidor Land Company by deed of May 17, 1948, and had it duly recorded in the Deed Records of Jasper County. It paid all taxes on this land from the date it was acquired to the date of the trial and before the taxes became delinquent and it claimed title to it. Its predecessors in title, Miller-Vidor Land Company, and its predecessors, paid all taxes on said land during the time title stood in them, respectively, prior to the time the taxes became delinquent, so, in so far as appellant is concerned, there is and was a continuous year by year payment of taxes on the land

before delinquency, for more than thirty years next prior to the filing of this suit. Miller-Vidor Land Company and its predecessors claimed the title to the land during said period until it was sold to appellant.

The record shows that Riley Cole acquired from Miller-Vidor Company, title to a 5-acre tract of land on January 4, 1936; that Dennis Cole acquired a 6-acre tract of land from Miller-Vidor Land Company by deed dated January 4, 1936; that Riley Cole conveyed his 5-acre tract to J. C. Palmer on April 5, 1940, and Dennis Cole conveyed his 6-acre tract to J. C. Palmer on March 4, 1941; that J. C. Palmer conveyed the aforesaid two tracts of land to Frank Graham by deed dated May 5, 1942; that Miller-Vidor Land Company conveyed a 5-acre tract of land out of the Hart Survey to Frank Graham by deed dated May 21, 1943; that Graham acquired the community interest of his wife, Thelma Graham, in the foregoing two 5-acre tracts and the 6-acre tract, by deed dated September 14, 1943. The appellees, H. R. Wooding and his wife, by deed dated February 1, 1949, purchased the foregoing three tracts of land from Frank Graham. This deed sets out specifically by metes and bounds, three tracts of land—two 5-acre tracts and the 6-acre tract heretofore referred to. In this deed we find the following recital:

"It is the grantor's intention herein to convey unto the grantee each, all and every tract, parcel or lot of land that he may claim, own or be entitled to in T & N O R R Survey No. 76 and T & N O R R Survey No. 77 and the T. W. Hart Survey Abstract 678 in Jasper County, Texas, whether particularly described by field notes or not."

Testimony was tendered to the effect that Riley Cole and Dennis Cole enclosed the 16.14 acres of land here in dispute with one barbed wire and one slick wire, by joining the southwest and southeast corners of the Riley Cole 5-acre tract to the northwest and northeast corners, respectively, of the Dennis Cole 6-acre tract. Neither Riley Cole nor Dennis Cole claimed title under their possession, and Dennis Cole testified that he enclosed and held possession of the land by permission of the Miller-Vidor Land Company and its officers; that at the time Riley Cole and Dennis Cole sold the above mentioned tracts to J. C. Palmer, Palmer was notified by them that the Coles did not claim the land, but that it belonged to Miller-Vidor Land Company and that Palmer should look to this company for his right to use the 16.14 acres. J. C. Palmer died prior to the trial of this suit, but his widow, now Mrs. Willie Mae Wilson, testified to the effect that she and her former husband, J. C. Palmer, took the land from Riley and Dennis Cole, enclosed by one barbed wire and one slick wire, with the understanding that the Coles had no title to the said land and made no claim to it; that the land belonged to Miller-Vidor Land Company and that they were tenants of the company; that the Palmers took possession from said Coles as tenants of the Miller-Vidor Company, and that they never at any time made any claim to this 16.14-acre of tract of land; that at the time Frank Graham acquired the land from the Palmers, Palmer was then paying the Miller-Vidor Company upon an additional 5 acres adjoining the 6-acre Dennis Cole tract, and that Graham took over the Dennis Cole and Riley Cole 5 and 6 acre tracts, and the contract to acquire the additional 5 acres. Graham did pay Miller-Vidor Land Company the balance of the contract price from time to time as the payments matured on the purchase price. Frank Graham took over the possession of this 16.14 acres of land from J. C. Palmer, enclosed by the wires as above stated, and occupied it under the same arrangement and same tenancy that Riley and Dennis Cole and the J. C. Palmers had used and occupied it. Testimony was also tendered to the effect that Frank Graham went to Beaumont after he acquired his land and the possession of the 16.14 acres of land, and while in Beaumont, went to the home office of the Miller-Vidor Land Company and discussed with its officers and agents his use and occupancy of the land, and there stated to them that

the land belonged to the Miller-Vidor Land Company and that the company thereupon gave Graham its permission to use the land as its tenant. There is an absence of testimony that Frank Graham at any time, by his acts or otherwise, repudiated his tenancy to the Miller-Vidor Land Company or that he gave up his original possession of said 16.14 acres of land and re-entered upon it to claim title by adverse possession, or that he brought home to the Miller-Vidor Land Company or its officers or agents that he was claiming in hostility to it of said 16.14-acre tract. Neither of the Coles, nor the Palmers, nor Graham, at any time paid any taxes on such tract, but Graham did use the tract in connection with his other lands, for pasturage for livestock. Mr. Graham testified to the effect that he was approximately 68 years old; that he was single, and with reference to his trip to Beaumont to see the Miller-Vidor Land Company, he said:

"Q. Who did you talk to when you went to the Miller-Vidor Land Company office in Beaumont soon after you bought these two tracts of land from the Palmers? A. All right to answer? A. I talked to Edward Green and Catherine and also John Lowe.

\* \* \* \* \* \*

"Q. When you went to the office of the Miller-Vidor Lumber Company in Beaumont— A. Oh huh.

"Q. —shortly after you bought this land from the Palmers, as you testified, when did you say to Mr. Green there in the presence of Mr. Lowe and these other people that you said were there. \* \* \* A. Well, I told Edward Green I had a piece of his land fenced, and he said that's the first time he had ever knew it. \* \* \*

"A. I asked him if he wanted to sell it to me or not, and he said he would come up there and look it over. \* \* \*

"Q. You say that you sold the land that you had there to Mr. Wooding? A. I did.

"Q. Mr. H. R. Wooding. At the time you sold that land, did \* \* \* you claim to own against the Miller-Vidor Lumber Company that tract you call the pasture? A. No, sir; I did not.

"Q. The deed that you signed, when you sold the land you did sell—\* \* \* to Mr. Wooding, were you able to read the deed and see what it said, or did you have to depend on somebody else for what was in it? A. No, I can't read. \* \* \*

"Q. Mr. Graham, did you tell Mr. Wooding at the time you sold out to him that you owned that pasture? A. I did not tell him that; no.

"Q. Did you tell Mr. Wooding or his Lawyer, Mr. Baten, down there at Beaumont what to put in the deed? A. I certainly didn't. \* \* \*

"Q. Did you tell Mr. Wooding that you were selling to him that pasture up there, the 16 acres? A. I did not.

"Q. Now, then, in using that pasture to pasture your stock in, were you doing it as a tenant of the Miller-Vidor Land Company? A. I could say yes. \* \* \*

"Q. Mr. Graham, did you let anybody cut any timber out there in that pasture? A. I did not; only what John Shafer and them—cut some staves in there.

"Q. Who did? A. Old man Shafer that lives at Vidor—John Shafer, a stave contractor down there. \* \* \*

"Q. Did you give it to him or did he pay you for it? A. No; I didn't get paid for it. He cut it and paid Miller-Vidor the stumpage, I suppose. \* \* \*

"Q. All right, sir. Now, Mr Graham, other than what we will call the Dennis Cole tract, the Riley Cole tract, and the tract you got from Miller &

Vidor and the pasture, was there any land anywhere else out there in the Hart Survey that you were claiming? A. No; none whatever. * * *

"Q. Mr. Graham, you stated that a Mr. Shafer cut some timber off of this pasture land? A. Yes, sir.

"Q. Do you remember about when it was? * * * A. About a year or so before I left from there. * * *

"Q. Did he pay you for the timber? A. He didn't.

"Q. Did he offer to pay you for the timber? A. No. * * *

"Q. Did you tell him who to pay for the timber? A. I did. Told him to pay Miller-Vidor Lumber Company.

    *      *      *      *      *      *

"Q. Then did you sell out to H. R. Wooding? A. Yes, sir; I did. I sold to Mr. Wooding.

"Q. Did you give a deed to Mr. Wooding for the land that you had and were selling to him? A. Yeah; I signed a deed to him. His attorney made it and I signed it; yes.

"Q. Where was that made? A. In Beaumont, I believe he had it made.

"Q. One of the 5 acre tracts, the Dennis Cole 5 acre tract, was separated from the Riley Cole 6 acre tract, wasn't it? A. Yes; it was. * * *

"Q. That's all right. Now, then, was the Dennis Cole 5 acre tract under fence when you got it? A. Yes, sir; it was under fence.

"Q. And was the Riley Cole 6 acre tract under fence— A. Yes, sir.

"Q. —when you got it? A. It was under fence; under a good fence.

"Q. Now, then, was any land that lies between those two tracts of land also under a fence? A. Yes, sir; there was.

"Q. What kind of a fence was around that? A. Well, there was one barb wire and one telephone—slick telephone wire around it . * * *

"Q. The pasture. And when you talk about the pasture, what do you mean, Mr. Graham? A. Well, there was a pasture—it was in between the two places.

"Q. All right. In between the two places? A. In fact, it come down, I believe, to the northwest corner of the 6 acre tract, and cornered there and went to the southeast corner of the 5 acre tract of Dennis Cole's.

"Q. All right. A. When I bought from Mr. Palmer, I went to Miller-Vidor's office and I told Edward Green —I said—* * *

"Q. Now, then, after you bought the land from Mr. Palmer, did you go to the Miller-Vidor Land Company's office? A. I certainly did.

"Q. Where was it located, Mr. Graham? A. Down on Crockett Street. * * *

"Q. In what town? A. Beaumont."

Mr. Graham further testified in part as follows:

"Q. Now, then, are those the tracts of land that you sold to Wooding? A. Yes, sir; yes, sir. That is all I sold.

"Q. Did you sell him any other land besides that? A. I didn't have no other land; no. * * *

"2. Mr. Graham, what you intended to do, then, was to—you wanted Mr. Wooding to have everything that you had; is that right? A. Well, I sold him the place just under the conditions that I bought it.

"Q. That's right. Everything that — A. The pasture was there. I didn't know—I didn't have it leased.

"Q. Everything that you had had, well, that's what Mr. Wooding had; is that right? A. I suppose.

"Q. All right. A. I suppose."

John Lowe testified in part as follows:

"Q. Did you have any conversation or was there any conversation by Frank Graham in your presence with any other official of the Miller-Vidor Lumber Company with respect to the fencing and the use of the 16 acre pasture that we are talking about? A. There was.

"Q. Will you tell the jury what it was, Mr. Lowe? A. Well, he walked in our office a few days after Frank bought that, and he told me, he says 'I have some of your land fenced up; what are you going to do about it?' I said 'What are you using it for, Frank?' I says 'I think I know.' I says 'Are you talking about that stuff between Dennis and Riley Cole's stuff?' He said 'Yeah.' I said 'What are you using it for, Frank?' 'Well,' he says 'I would like to let my stock, horses and cows run in there.' I said 'Well, if you want to use it, as far as I am concerned, I would just as soon you have it as anybody.' So, he—and I said 'You are not going to set any claim up against it?' He said 'No, sir; I don't claim it.' Mr. Green and— well, the office force was there and heard it. * * *

"Q. All right. Now, during the period between 1942 and 1949, did Frank Graham pay you any rent for the use of that pasture? A. No; he did not.

"Q. Did he ever sign an acknowledgment of tenancy— A. No.

"Q. —to that property? A. He just told us, as I told you—I repeated it awhile ago, he told me he had some of our stuff fenced up, and I told him 'As long as you don't claim it you can use it—'

"Q. All right. A. —'I just as soon you use it as anybody.' * * *

"Q. Now, Mr. Lowe, after seeing the arrangement and the use that the Dennis Cole people made of this 16 acre pasture over there, and then on down the line to the time when you had the conversation with Frank Graham and saw his use that he was making of it, did his use in any way change from what it was at the time you had the conversation with him when you told him he could go ahead and use it? A. Why, no. If I hadn't been satisfied with it I would have did something about it and made an effort to have it taken down, if I had doubted it at all."

■ As we understand appellant's position, it is to the effect that this record shows without dispute that Frank Graham acknowledged appellant's title to said land and failed to raise an issue of adverse possession under the ten-year statute of limitation, and by reason thereof, appellant was entitled to an instructed verdict; that Graham recognized Miller-Vidor Land Company as his landlord and that there is an absence of any testimony in the record to indicate that Graham ever repudiated his tenancy and brought notice thereof home to Miller-Vidor Land Company or to appellant.

In Federal Land Bank of Houston v. King, 132 Tex. 481, 122 S.W.2d 1061, 1062, our Supreme Court, speaking through Judge German, opinion adopted, made this statement of the rule:

"Where possession is taken of the land of another, but, at the time such possession is taken, it is in recognition of the true title and the constructive possession of the title holder, the occupant is in possession in subjection to the recognized title. He cannot perfect a claim of title or defense under the statute as against the true owner, without bringing to his notice a re-

pudiation of the recognition, and of the assertion of an adverse claim. The right to shield his possession under the statute, or to carve an estate, dates only from his repudiation."

Our Supreme Court has not changed this doctrine.

■ The record here shows that the deed from J. C. Palmer and wife to Frank Graham is dated May 5, 1942; that the deed from Miller-Vidor Land Company to Frank Graham is dated May 21, 1943, and these deeds fixed in Frank Graham title to the Dennis Cole 5 acres, the Riley Cole 6 acres, and the 5 acres contracted for by Palmer and wife from Miller-Vidor Land Company. It is not contended that these deeds conveyed any part of the 16.14 acres of the W. T. Hart Survey here in controversy. The deeds do fix the time of the commencement of Frank Graham's possession of the tracts just mentioned, and also his use of the 16.14 acres of land. Frank Graham conveyed the 5-acre Dennis Cole tract and the 6-acre Riley Cole tract and the 5-acre Graham tract to the appellees H. R. Wooding and wife, by a deed dated February 1, 1949. Now bearing in mind that Frank Graham acquired these tracts May 5, 1942 and May 21, 1943, respectively, the appellees claim that their three years' possession, tacked onto Frank Graham's seven years' possession, gave them title to the 16.14 acres involved by adverse possession under the ten-year statute of limitation. We think that it is without dispute that appellant proved a good and sufficient record chain of title to the 16.14 acres of the W. T. Hart Survey. Appellees, by their pleadings and by their proof, attempt to defeat the appellant's record title by their claim of adverse possession under Art. 5510, Vernon's Annotated Texas Civil Statutes. Needless to say, appellees had the burden of proving without the benefit of any inferences, their adverse possession under said statute.

In Stringer v. Johnson, Tex.Civ.App. 222 S.W. 267, 274, we find this statement of the rule:

"One asserting title to land by limitation has the burden of proving every fact necessary to give such title and inferences are never indulged in favor of a limitation claimant. Dunn v. Taylor, 102 Tex. 80, 113 S.W. 265."

Moreover, appellees are and were compelled to use the possession of Frank Graham for seven years to constitute the adverse possession claimed by them; and it was their burden to prove that continuously during said ten years period, Frank Graham had, and that they as his successors had, openly and notoriously claimed the title to said land against appellant and all others. Graham must not have recognized the record owner's title during such period in order to perfect title by the ten years limitation. See Davis v. Cisneros, Tex.Civ.App., 220 S.W. 298; Waller v. Leonard, 89 Tex. 507, 35 S.W. 1045. Did appellees carry their burden in this behalf? We think the answer is "No."

In Kirby Lumber Co. v. Conn., 114 Tex. 104, 263 S.W. 902, 903, we find this statement of the rule:

"In order for a person, having neither title nor color of title nor deed duly registered, to acquire full title, precluding all claims, to real estate in Texas, which will support an action for the recovery of the real estate, such person must have had peaceable and adverse possession of the real estate for not less than 10 years. An essential of the required adverse possession is an appropriation of the land under a claim of right. One may hold land under a claim of right though he enters as a naked trespasser and continues his appropriation of the land for the express purpose of acquiring that which he knows belongs to another. The

mala fides of the possessor is not fatal to his claim of right. *Yet, without intent to claim land as his own, no matter how groundless the claim, the possessor can never acquire a limitation title thereto."*

We think the foregoing rule is peculiarly applicable to the factual situation here before us. It is without dispute that Frank ·Graham did not claim the 16.14 acres from appellant's predecessor, Miller-Vidor Land Company. He so testified without any equivocation whatsoever.

The witness, John Lowe, heard him tell the officers of Miller-Vidor Company that he was not claiming their land, and Lowe so testified on trial. As we view this record, there is no dispute of this evidence. Frank Graham is not in appellant's chain of title and appellant does not claim through any conveyance into or out of Frank Graham. Neither is John Lowe in appellant's chain of title. These statements to the effect that Graham acknowledged Miller-Vidor Land Company's title and occupied the 16.14 acres as a tenant under Miller-Vidor, cannot be disregarded, nor could Frank Graham acknowledge appellant's title to the 16.14 acres by direct and positive statements to its officers and agent, leading them to believe that he would not, in the future, claim the land without being bound thereby. Needless to say, he could not later secretly change his relations to appellant and the Miller-Vidor Land Company, and secretly and privately, without notice to the true record owner, successfully take title to the land by adverse possession. We think it makes no difference what he may have said to the Woodings, privately, in the sale of his other property to Wooding, because the record is without dispute that Graham had previously acknowledged himself as a tenant of the Miller-Vidor Land Company, appellant's predecessor in title. As we understand the law in Texas, in order to perfect limitation title in appellees to the 16.14 acres against ap-

pellant and the Miller-Vidor Land Company, Frank Graham must have claimed the title to said land continuously during the seven years it was in his possession, and he must have intended to take the title to said land from its true record title owner and he must have brought this fact or claim home to Miller-Vidor Land Company during the period of his claim. He could not keep the hostile character of his claim to said land a secret from the true record owner of it and sustain a plea of limitation to the title. Nor could he mislead the true record owner, Miller-Vidor Company, by telling its officers that the land belonged to the company and not to him, and that he did not and would not in the future claim it against said Company, and that he would use the land under said company's permission as a tenant, and then secretly use such possession to perfect the limitation title to the land. It makes no difference what Graham may have told the appellees Wooding, in a private and secret conversation in connection with their negotiations for Wooding's purchase of the three tracts of land that Graham had bought from Palmer. These conversations could not change Graham's relationship and tenancy with Miller-Vidor Company, nor its successors in title, because Graham had recognized Miller-Vidor Company's title to said land and had informed this company that he made no claim to it, which fact destroyed every possibility of Graham's perfecting title in himself to said land by adverse possession. Therefore, it is without dispute that the appellees here, stood in Graham's shoes. They can have no greater right than Graham had. The fact that Gra-. ham did not disclose his tenancy and his prior statements that he had made with reference to his tenancy to the appellees is not a situation that they can complain of or benefit by, in so far as the appellant is concerned. Moreover, appellees knew that Frank Graham was not the record title owner of the land, and that Graham was either a tenant or trespasser, and if they did not expect to be bound

by Graham's prior statements and admissions, they would have to make their investigation from the record owner and holder of the title. In Village Mills Co. v. Houston Oil Co., Tex.Civ.App., 186 S. W. 785, 804, reversed on other grounds by the S.Ct. 241 S.W. 122:

"In order to perfect title by adverse holding, the law contemplates that the true owner must have had actual knowledge of the hostile claim, or the possession must have been so open, visible and notorious and the dominion exercised over the land of such a character as to raise the presumption of notice to the world that the rights of the true owner are invaded intentionally and with a purpose to assert a claim of title adversely to his. It is not the purpose of limitation statutes to give title to land through a trick or artifice, or through a secret mental process working between the minds of a tenant and one claiming land under color of title, but rather does it seek to assist the one who comes out in the clear light of day and asserts by his acts such dominion over all of the land he claims."

See also, Houston Oil Co. v. Stepney, Tex. Civ.App., 187 S.W. 1078 (writ ref.); Hardy v. Bumpstead, Tex.Com.App., 41 S.W. 2d 226, 76 A.L.R. 1488; Rick v. Grubbs, 147 Tex. 267, 214 S.W.2d 925; Word v. Drouthett, 44 Tex. 365, 370. See also Orlando v. Moore, Tex.Civ.App., 274 S.W. 2d 86 (n. r. e.); Wynn v. Mendoza, Tex. Civ.App., 287 S.W.2d 217 (n. r. e); Saunders v. Hornsby, Tex.Civ.App., 173 S.W. 2d 795 (writ ref. w. o. m.); Bracken v. Jones, 63 Tex. 184; Cobb v. Robertson, 99 Tex. 138, 86 S.W. 746; Houston Oil Co. of Texas v. Niles, Tex.Com.App., 255 S.W. 604; Ballingall v. Brown, Tex.Civ.App., 226 S.W.2d 165 (n. r. e.); American National Bank v. Wingate, 266 S.W.2d 934 (n. r. e.); 2 Tex.Jur. p. 145, par. 75.

■ Not only did Graham acknowledge his tenancy, but he also permitted the cutting of some timber on the property while he was using the tract in question for pasturage, and these admissions and circumstances bring him within the rule announced by the Supreme Court in Rick v. Grubbs, supra:

"An important part of the law as so stated is that the possession must be of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant. It follows that the law's requisites are not satisfied if the occupancy is shared with the owner or his agents or tenants. * * *

"'To be effective as a means of acquiring title, the possession of an adverse claimant must be exclusive of the true owner. The owner must be wholly excluded from possession by claimant. Any sort of joint or common possession by claimant and the owner or a tenant of the owner prevents the possession of claimant from having the requisite quality of exclusiveness. In these circumstances, the law refers the possession to the person having the legal title.'" [147 Tex. 267, 214 S.W. 2d 927.]

■ Art. 5515 of Vernon's Texas Civil Statutes defines adverse possession as "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." Intention of the possessor of land to claim it as his own, is an essential element of adverse possession, and in the absence of such intention, the possessor cannot mature a limitation title to land belonging to another. See 2 Tex. Jur. 127, Sec. 67, and authorities there collated.

In Wright v. Vernon Compress Co., 296 S.W.2d 517, 522, our Supreme Court made this statement of the rule:

"Mere occupancy of land without any intention to appropriate it will not support the statute of limitation."

Going back to Graham's testimony, (and we do not think he is an interested witness) he testified specifically and unequivocally to the fact that he admitted to Miller-Vidor Land Company, appellant's predecessor in title, that he was its tenant and that he was not claiming the 16.14 acres of land. This was an acknowledgment of tenancy that the Vidor Land Company and its successors in title had the right to rely upon, and the duty rested upon Graham that in the event he repudiated such tenancy, to bring such repudiation home to the notice of the true owner. There is no doubt that appellees stand in Graham's shoes and can have no greater right than Graham had or has, and while it is true that both Mr. and Mrs. Wooding testified to the effect that in their negotiations with Graham, he told them that he was claiming this particular piece of land and that he had been claiming it for a period of seven years, and that if the Woodings bought it they would have to hold it only three more years, claiming the same as he did, in which to perfect title to the land under our ten-year statute of limitation. Assuming that that representation is true under the jury's finding, as we are bound to do, there is no contention that Graham's representation to the Woodings was brought home to the Vidor Land Company or its successors in title. So, unless the Woodings were willing to be bound by Graham's previous acknowledgment of tenancy, it was their duty to bring Graham's representations to the attention of the record owner of the title. This they wholly failed to do. Moreover, since Graham is not in the record chain of title, his representation to the Woodings is hearsay as against Miller-Vidor Land Company and its successors in title. Moreover, Graham's admission of tenancy to the Vidor Land Company cannot be disregarded. He is not an interested witness. His admission of tenancy was made shortly after he purchased the three tracts of land. The exact time is not given. The statements attributed to him by the Woodings were made several years later, the exact time not given except that they were made during the negotiations with Graham just before they purchased the land in 1949. Needless to say, these negotiations were merged in the deed and there is no controversy about the deed from Graham to the Woodings, and the Woodings do not claim that this particular tract of land was conveyed in the deed, but their sole claim is by "tacking." The statements by the Woodings as to these representations of Graham were in no wise brought home to the appellant or its predecessors in title.

In Dunlap v. Wright, Tex.Civ.App., 280 S.W. 276, pt. 6, at page 279 (no writ hist.), this court, speaking through Chief Justice Gallagher, made this statement of the rule as to an interested witness:

"It has been frequently held, however, that, when the evidence of an interested witness is direct and positive on the point at issue, and where there are no circumstances in the record tending to discredit or impeach his testimony, a verdict contrary thereto will be set aside, that such testimony will justify an instructed verdict, and that a judgment contrary thereto may be reversed and rendered." Citing many cases.

Assuming for argument's sake that Graham was an interested witness, there are certainly no circumstances in the record tending to discredit or impeach Graham's testimony at the time he made his admission of tenancy to the Vidor Land Company. Moreover, he testified directly and positively to the effect that he made such admission of tenancy and that he never advised the Vidor Land Company or its successor in title that he had repudiated such tenancy. Moreover, the deed was prepared by the Woodings' attorney; Graham could not read or write; and there is no contention that he sought to convey anything except the three tracts of land described in the deed. Although the Woodings would have the jury believe that they bought the

three tracts in consideration of Graham's statement to them that he had been claiming the 16.14-acre tract for a period of seven years, yet they did not have this particular tract described in the deed; nor did they have their lawyer prepare an affidavit to be executed by Graham, setting up such claim; nor did the Woodings render such tract in question for taxes prior to the filing of this suit by appellant in December, 1954. Neither the Miller-Vidor Land Company nor appellant, nor their agents or representatives, were present or parties or in privity to the negotiations between Graham and the Woodings, and by reason thereof the testimony of the Woodings was hearsay. See Texas Co. v. Lee, 138 Tex. 167, 157 S.W.2d 628, pts. 2–5. Our Supreme Court in Watkins v. Smith, 91 Tex. 589, 45 S.W. 560, held that "recitals in a deed are evidence against the parties to such deed and their privies, but not against strangers." Needless to say, Graham and the Woodings are and were strangers to the title of Miller-Vidor Land Company and to appellant. Since the Woodings are strangers to the Vidor Land Company and the appellant, their oral declarations as to statements made by Graham in their negotiations with him for the purchase of the three tracts of land described in the deed are hearsay, and without probative force against the Vidor Land Company and its successors in title. See also: Fenley v. Ogletree, Tex.Civ.App., 277 S.W.2d 135, pts. 15–19, at pages 144–145 (n. r. e.) and authorities there cited.

In Gay v. Jackman, 252 S.W. 1042, 1043, the Commission of Appeals, speaking through presiding Judge McClendon, made this statement:

"* * * the general rule of law now firmly established by the great weight of authority in this country is thus stated in 1 A. & E. Enc. of Law (2d Ed.) p. 685:

" 'It is a rule applicable to all cases of admissions against proprietary interest that the admission must have been made while the title was in the person making it, neither before it was acquired, nor after it was transferred.'

"This rule is supported in the following cases and texts:" Citing many cases.

See also opinion on motion for rehearing, 254 S.W. 927. The foregoing opinion has been cited and followed many times, and so far as we are able to find, the rule here stated has not been changed or modified by our Supreme Court. See also: McCormick and Ray, 2nd Ed., Sec. 1122, "Admissions Distinguished from Declarations against Interest", pp. 20–21. Also Secs. 1173 and 1174, pp. 66–68.

■ Appellant seasonably objected to this testimony and moved to strike it on the ground that it was hearsay, in that neither Graham nor Lowe was in the chain of title; but the court overruled the objection. Since we are of the view that the Woodings' testimony as to the representations made to them by Graham concerning his holding the property for the purpose of perfecting limitation is hearsay as against the Miller-Vidor Land Company and its successors, such testimony comes under the rule announced by the Supreme Court in Henry v. Phillips, 105 Tex. 459, 151 S.W. 533, at page 538. There we find this statement:

"When the appellate court comes to apply the law to testimony constituting the facts of the case, it can only base its conclusion upon such testimony as is under the law competent. That which is not competent testimony should be given no probative force. The admission of such testimony is no talisman to give effect to that which is irrelevant and incompetent to sustain or deny a material issue in a case."

See also, 4 Tex.Dig., Appeal and Error, ■■■■■ Consideration of Incompetent Evidence; 17 Tex.Jur. 521, par. 212 and authorities there cited; United States

Fidelity & Guaranty Co. v. Inman, Tex. Civ.App., 65 S.W.2d 339 (no writ hist.); Sinclair Refining Co. v. Womack, Tex.Civ. App., 66 S.W.2d 402 (no writ hist.); Ward v. National Benevolent Society, Tex.Civ. App., 155 S.W.2d 994 (no writ hist.).

The representations that Graham made to the Woodings being unknown to the Vidor Land Company and appellant, and not in the presence of the Vidor Land Company or any of its agents, representatives or successors in title, is hearsay and not binding on the Miller-Vidor Land Company nor its successor in title. For the reasons here stated, we think that the trial court erred in overruling appellant's motion for an instructed verdict, and having so failed, it was the court's duty to grant appellant's motion for judgment non obstante veredicto and render this cause. Accordingly, this cause is reversed and judgment rendered that the Woodings take nothing.

If we be mistaken in the foregoing view, then we are of the further view that the answers of the jury to Special Issues Nos. 1, 2, 3, 4 and 5 are against the great weight and preponderance of the evidence, under the doctrine announced in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, and that this view will require that this cause be reversed and remanded.

In the event we are mistaken in either of the foregoing views, we are of the further view that the court committed reversible error in refusing to submit to the jury appellant's Special Issues Nos. A, B, C, D, E, F, G, H and I. The court overruled all of appellant's objections to Special Issue No. 3 and refused to submit to the jury the foregoing special issues. These requested issues inquired as to whether or not Graham acknowledged, during the ten-year period involved, to Miller-Vidor Land Company or its agents, title to said 16.14 acres to be in said company, and occupied said land with the permission of the Miller-Vidor Company. Needless to say, from the views heretofore expressed by this court, the foregoing were the ulti-mate and determinative fact issues in this cause. We have previously held that these issues are without dispute, and on this view have rendered this cause. But in the event we are mistaken in this view and this cause is finally remanded to be retried, the requested issues should be given, in the event such issues are tendered on a retrial. Under the statute and rules allowing cases to be submitted to juries on special issues, the appellant was entitled to have its defense to appellees' plea and claim of adverse possession under the ten-year statute of limitation affirmatively submitted to the jury. See Southern Kansas Railway Company of Texas v. Wallace, Tex.Com.App., 206 S.W. 505; Whelan v. Henderson, Tex. Civ.App., 137 S.W.2d 150 (writ dis.); Cuniff v. Bernard Corp., Tex.Civ.App., 94 S.W.2d 577 (writ ref.); Whittier v. Robinson, Tex.Civ.App., 25 S.W.2d 959 (no writ hist.); Bennett v. Carey, Tex.Civ. App., 99 S.W.2d 1105 (writ dis.). See also: Wright v. Vernon Compress Co., Tex., 296 S.W.2d 517 and cases there cited. Also Rule 272, Texas Rules of Civil Procedure. See also: Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517; Rosenthal Dry Goods Co. v. Hillebrandt, Tex.Com.App., 7 S.W.2d 521; Colorado & Southern Ry. Co. v. Rowe, Tex.Com.App., 238 S.W. 908; Houston Oil Co. of Texas v. Pullen, Tex. Com.App., 272 S.W. 439; Gillean v. City of Frost, 25 Tex.Civ.App. 371, 61 S.W. 345; R. W. Wier Lumber Co. v. Eaves, Tex.Com.App., 296 S.W. 481; Texas & N. O. Ry. Co. v. Speights, 94 Tex. 350, 60 S.W. 659. Perhaps we should say that appellant in its objections to the court's charge, clearly pointed out that the issues submitted in the main charge did not bring to the attention of the jury, or require a finding by it on the question of whether Frank Graham had acknowledged Miller-Vidor's title, and whether or not he had repudiated his acknowledgment or was making claim against the Miller-Vidor Land Company to the title to said land; that said issues were a general charge upon the weight of the evidence and assumed

under the evidence that Frank Graham had claimed said land adversely to the Miller-Vidor Land Company and not in pursuance of a permissive use by him of said land.

Because of the fact that we are convinced that this cause should be reversed and rendered as to the Woodings, further discussion would be of no avail. Accordingly, the judgment of the trial court is reversed and rendered as to the Woodings, and in all other respects is affirmed.