2001 OK CIV APP 15

**William F. CORNELIUS,**
**Plaintiff/Appellee,**

v.

**The MOODY BIBLE INSTITUTE OF CHICAGO an Illinois not-for-profit corporation, Defendant/Appellant,**

**and**

**The Moody Bible Institute of Chicago, an Illinois not-for-profit corporation, and Delois A. Braun, Third–Party Plaintiffs/Appellants,**

v.

**Samedan Oil Company, Shell Western E & P, Inc., Shell Oil Company, Gulf Oil Corporation, and William F. Cornelius, Third–Party Defendants.**

**No. 93,467.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Decided Nov. 9, 2000.

Certiorari Denied Feb. 8, 2001.

Modified Feb. 21, 2001.

William A. Gossett, Duncan, OK, for Plaintiff/Appellee.

Kent P. Sullivan, Leach, Sullivan, Sullivan & Watkins, Duncan, OK, for Defendants/Third–Party Plaintiffs/Appellants Moody Bible Institute of Chicago and DeLois Braun.

Opinion by KENNETH L. BUETTNER, Judge:

¶ 1 William F. Cornelius sued to quiet title in a mineral interest he claimed through adverse possession. He based his claim on the undisputed fact that he had received royalty payments from the lessee petroleum companies for the prescribed period of time. He also claimed that although mineral production from the seventy acres in question had ceased before the end of the prescription period (no wells on the surface), that because

production was forthcoming from a drilling rig in a unitized area which included 20 of the seventy acres, that the prescribed period was not compromised. We disagree on both counts and reverse the trial court's determination that Cornelius had successfully acquired the mineral estate through adverse possession.

## STANDARD OF REVIEW

¶ 2 An action to quiet title to real estate is an equity proceeding. "In cases of equitable cognizance this Court will examine the record and weigh the evidence, but will not disturb the trial court's judgment unless against the clear weight of the evidence or contrary to law or established principles of equity." *Wetsel v. Johnson,* 1970 OK 69, 468 P.2d 479, 481. "In cases of equitable cognizance, an appellate court is not bound by the trial court's reasoning or by its findings. The appellate court will examine the whole record, consider and weigh the evidence, and if the law and facts warrant, the court will affirm the judgment if the trial court reached the correct ultimate conclusion." *Dodds v. Lagan,* 1979 OK CIV APP 12, 595 P.2d 452, 456.

## FACTS

¶ 3 The material facts were stipulated by William F. Cornelius, The Moody Bible Institute of Chicago, and DeLois Braun.[1] At trial, the court acknowledged the stipulations; heard testimony from Cornelius and Braun, and admitted documentary evidence. Consequently, the issues for review are those of law, that is, whether the court's determination that Cornelius carried his burden of proving ownership of the mineral estate through adverse possession is supported by the clear weight of the evidence. The following facts were stipulated:

1. The case concerned the ownership of the minerals under and which might be produced from a seventy acre tract in Stephens County (legal description omitted). It is a severed mineral interest, i.e., Cornelius has no interest in the surface.

2. Cornelius claimed title by virtue of adverse possession for fifteen years before the filing of his quiet title action.

3. Moody Bible claimed ownership though the conveyance of the mineral estate from Cornelius' mother to Braun's father who received title to the mineral interest through distribution after her father's death.

4. Cornelius was the only heir to his mother's estate and was unaware that his mother had transferred her mineral interest to her brother, James N. Tarpley, DeLois Braun's father. Mrs. Cornelius died from natural causes March 30, 1966. Mr. Tarpley died as a result of injuries suffered in an auto wreck May 8, 1966.

5. Mrs. Cornelius first leased the mineral interest to Gulf Oil February 14, 1945. The lease became vested in Samedan Oil Corporation. Production continued through February 1, 1970.

6. Effective February 1, 1970, the North Alma Penn Unit became effective as a secondary recovery unit. A twenty acre tract of the subject lands was included in the unit. The only well on the twenty acre tract has been a saltwater injection well since February 1970, although production from the unit continued from February 1970 through the time of the filing of the quiet title action, March 7, 1996.

7. There is a ten acre tract from the subject lands which has a producing well. Production was first obtained from this well on December 20, 1995.

¶ 4 Cornelius testified that he received mineral production proceeds, paid gross production tax, windfall profit tax and income tax on the mineral production proceeds for the previous twenty-nine years. He filed an affidavit of heirship with the lessee oil company. Cornelius did not execute a lease on the mineral interest and had not visited the surface since the late 1950's.

---

1. Other named individuals either disclaimed or defaulted. The trial court certified the appeal as ripe pursuant to 12 O.S. Supp.1995 § 994 with respect to Samedan Oil Corporation, Shell Western E & P, Inc, Shell Oil Company, and Gulf Oil Corporation.

## DISCUSSION

¶ 5 We first address whether Cornelius' actions in receiving royalties and paying taxes were sufficient to gain title to the mineral estate through the doctrine of adverse possession. "Where there is a severance of the mineral estate from the surface estate the owner of the minerals does not lose his right or his possession by any length of non-user (sic).... " *Hassell v. Texaco, Inc.*, 1962 OK 136, 372 P.2d 233, 235.

¶ 6 "Adverse possession must be open, visible, continuous and exclusive, with a claim of ownership, such as will notify parties seeking information upon the subject that the premises are not held in subordination to any claim of others, but against all titles and claimants." *Id.* at 235. "The doctrine of adverse possession is to be taken strictly. Such a possession is not to be made out by inference, but may be made out only by clear and positive proof, with every presumption in favor of possession in subordination to the title of the true owner." *Id.* at 235.

¶ 7 Applying these principles to the facts at hand, we hold that receipt of the benefits of the lease and paying taxes thereon, are not acts sufficient to divest ownership from the record title owner through adverse possession. "In order for a person to adversely possess a severed mineral estate, he must actually open a well on a tract of land and reduce the minerals under that tract to possession for the statutory period." *Atlantic Richfield Company v. Tomlinson*, 1993 OK 106, 859 P.2d 1088, 1094.

¶ 8 "Accrued royalty is personal property. Unaccrued royalty, or royalty to accrue is a part of the estate remaining in the lessor and is real property." *McCully v. McCully*, 1939 OK 43, 86 P.2d 786 (syllabus by the court, ¶ 1.) "By executing the division order and collecting the ⅞₄ of the royalty belong to appellee, appellant merely converted to his own use the oil and gas that had already been produced by the Gulf Production Company and did not affect that which remained in the ground, which is the subject matter of this case." *Saunders v. Hornsby*, 173 S.W.2d 795, 796 (Tex.Civ.App.1943). "Nor do we think payment of the taxes constituted an adverse occupancy of the mineral interest.... " *Id.* at 796. Accord: *Stratmann v. Stratmann*, 6 Kan.App.2d 403, 628 P.2d 1080, 1085 (1981) ("Furthermore, any argument that the collection of royalty payments for the 20 years constituted adverse possession of the minerals in place (realty) lacks merit.") For the reasons expressed, we hold that Cornelius' acts of receiving royalties and paying taxes were insufficient, as a matter of law, to acquire title to the mineral interest through adverse possession.

¶ 9 Although our determination that Cornelius did not gain the mineral estate through adverse possession disposes of the appeal, we choose to address the question whether a rig on unitized property, but not on the part of the surface overlaying the mineral interest, may operate to satisfy the requirement of actually opening a well on a tract of land and reducing the minerals under that tract to possession for the statutory period.[2] As the court stated in *Atlantic Richfield Company v. Tomlinson*, 859 P.2d at 1095, "... that under the law of capture a person cannot acquire prescriptive title to minerals drained from *any tract other than that upon which his well is located.*" (emphasis in original). Further, unless the drilling apparatus is on the surface overlaying the mineral estate, drilling within a unit does not satisfy the essential elements of adverse possession.

¶ 10 Having held that Cornelius did not acquire title to the subject mineral estate through adverse possession, we REVERSE the trial court's order and REMAND the cause for proceedings consistent with this opinion.

¶ 11 JONES, P.J., concurs in part, dissents in part; and GARRETT, J., concurs.

---

2. Appellants also claim that the trial court erred in considering testimony of events which predated the thirty year root as established by the Marketable Record Title Act, 16 O.S.1991 § 73, but fail to show prejudice.