Walter WROBLESKI et ux., Appellants,

v.

Tommy COLEMAN, Appellee.

No. 6837.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 27, 1955.

Shead & Holt, Longview, for appellants.

Smith & Hall, Marshall, for appellee.

PER CURIAM.

Walter Wrobleski and wife, Ruth Wrobleski, sued Tommy Coleman, former Constable of Precinct No. 8 of Harrison County, Texas, and Dr. I. R. Fowler for alleged damages. Plaintiffs took a non-suit as to Dr. Fowler. Trial was to a jury. Two special issues were submitted to the jury. The jury in response to Special Issue No. 1 found that Mrs. Ruth Wrobleski was not unlawfully or unreasonably detained or delayed by the defendant, Tommy Coleman, and it then became unnecessary to answer Issue No. 2 as to alleged damages. Judgment was entered in favor of Coleman. Plaintiffs' motion for new trial was overruled and they have appealed to this Court.

Appellants present five points wherein they contend in essence that immaterial and prejudicial matters were admitted in evidence tending to disgrace and degrade appellants with respect to the race and color of Walter Wrobleski's business and personal associates, allegedly injecting racial prejudices, etc., and that the trial court erred in overruling appellants' motion for mistrial, etc.

No contention is made by appellants that there is no evidence or that the evidence is insufficient to support the verdict of the jury.

■ The facts reveal that Walter Wrobleski, on May 12, 1954, was taking his wife, Ruth Wrobleski, by ambulance from Marshall, Texas, to Zwolle, Louisiana, (which was near to her former home at Florine, Louisiana) for medical treatment by a doctor she knew there in Zwolle. The ambulance was owned by an insurance organization known as the Brotherly and Sisterly Club of Christ and was being driven by Walter Wrobleski, who was Supervisor of said Club. Tommy Coleman, who was Constable of Precinct No. 8 of Harrison County, Texas, on May 12, 1954, was on the highway at that time, observed the manner in which Wrobleski was driving the ambulance, and "after running him four or five miles" on the highway, arrested Wrobleski and charged him with three charges, "having a siren on unlawfully," "having a red light on unlawfully," and "passing in a no-passing zone." Neither Wrobleski nor the Brotherly and Sisterly Club had a permit from the State of Texas to operate the ambulance, according to the testimony. Wrobleski, at the direction of Constable Coleman, drove the ambulance to Waskom, Harrison County, Texas, for appearance before the Justice of the Peace on the charges. Mrs. Wrobleski was placed in Dr. I. R. Fowler's clinic in Waskom and stayed there about 45 minutes while her husband was before the Justice of the Peace. Some time was consumed in an effort by Wrobleski to secure a bond to be brought to him by his attorney from Marshall; however, before any bond was made, Wrobleski decided to pay fines in the cases, and more time was consumed in going to Marshall (about 20 miles away) for Wrobleski to secure money to pay fines in the matter which he did, and he was then released and allowed to proceed in the ambulance. The time consumed and delay involved from the arrest of Wrobleski to the time of his release, was approximately three and one-half hours. The evidence as to the seriousness or lack of seriousness of Mrs. Wrobleski's physical condition was conflicting. We think the finding of the jury that she was not unreasonably or unlawfully detained or delayed is amply supported by the evidence in the case.

Appellants present four bills of exceptions which form the basis of their five points above referred to. The first bill of exception deals largely with the cross-examination of Walter Wrobleski where he was questioned with reference to two women who worked or purported to work in Wrobleski's office and other matters with respect to Wrobleski's insurance business. This bill of exception as well as the other bills of exception, bears a qualification of the trial court which contains the instruction given by the trial court to the jury to not consider this line of evidence. (This qualification was not excepted to by appellants.)

The second bill of exception relates to the cross-examination of Walter Wrob-

leski, wherein he was cross-examined about his business connection with the Brotherly and Sisterly Club of Christ, an insurance organization composed of colored people, which organization was the owner of the ambulance that Wrobleski was driving at the time of his arrest and which Wrobleski contended to Constable Coleman that he had a right to operate under the charter of the organization without a permit, and Wrobleski testified that he was Supervisor of said organization and was asked as to the number of the members of the organization and as to whether the members were white or colored. This bill of exception was likewise qualified by the trial court, which qualification was not excepted to, which qualification will be later quoted in this opinion.

Appellants' bill of exception No. 3 relates to the cross-examination of Wrobleski wherein he was questioned about making a call to the F. B. I. at Tyler shortly after his release by Constable Coleman on his way to Zwolle, La., with his wife, and he was asked about another stop he made with the ambulance before he got to Zwolle, and related that he stopped at the house of Ernest Spencer, a colored man, who was President of the Brotherly and Sisterly Club of Christ. This bill of exception was likewise qualified by the court, which was not excepted to, which qualification is later quoted in this opinion.

Appellants' bill of exception No. 4 complains of the asking of certain questions to Wrobleski on cross-examination. The record, however, reflects that the trial court sustained appellants' objections. We quote from the record on this matter as follows:

"Q. And you had a meeting out here at some Negro's house that night, didn't you? A. No, sir, I did not.

"Mr. McKool: Now, Your Honor. May it please the court—

"The Court: I sustain the objection.

"Mr. McKool: I would like the court to instruct the jury not to consider it for any purpose—

"The Court: Gentlemen, you will not consider that question or answer for any purpose.

"Mr. Hall: Q. You didn't have a meeting that night?

"Mr. McKool: Now, Your Honor, when the Court sustains the objection, I would like for Counsel not to ask—

"The Court: I sustain that objection.

"Mr. Hall: If the court please, I think that is admissible in evidence— he testified to it before that he did.

"The Court: For the present, I am going to sustain the objection.

"Mr. Hall: Q. Did you have a meeting that night? A. But, I didn't go to it, sir.

"Mr. McKool: If it please the court, the court sustained the objection on three different occasions."

The trial court also qualified this bill of exception, to which no exception was taken, which qualification is hereafter quoted in this opinion.

The trial court instructed the jury not to consider various matters above complained of by appellants and this instruction is made a part of the qualification attached to each of the above referred to four bills of exceptions. This qualification which is attached to each bill reads as follows:

"The above and foregoing Bill of Exception No. — (the number of each bill 1 to 4, inclusive, appears here) is signed and ordered filed, with the following qualification, to-wit:

"The Court: Gentlemen of the Jury: Give me your attention, please. On some testimony that was introduced or sought to be introduced on yesterday evening, I am going to instruct you not

to consider for any purpose whatsoever, disabuse your minds of the question that was asked about and concerning the plaintiff's wife, whether or not she had at any time prior to the evening of May 12th visited in or been at the home of Spencer, down here south of Marshall, where the plaintiff said he stopped by to leave some information. Further, I am withdrawing from your consideration, and you are not to consider for any purpose, the kind or character of meeting that the plaintiff attended on the evening of the 12th of May, when he returned from Zwolle, Louisiana; that is, where the meeting was held, or the kind and character of meeting he attended. I am withdrawing from your consideration, and you will not consider for any purpose whatsoever, the questions asked and answers given about and concerning two certain women who worked or purported to work in the office of the plaintiff over the Leader Dry Goods Store here in Marshall. Now, those matters are withdrawn from your consideration; you haven't any right, legal or otherwise, to refer to or consider those matters in any way whatsoever, in your deliberations at the time you go to the jury room to consider your verdict in this case. Note: As per Statement of Facts, page 107."

Appellee contends that the cross-examination of Wrobleski as to his relationship with the above named colored insurance organization, which owned the ambulance that Wrobleski was driving at the time of his arrest, which organization Wrobleski was Supervisor of, and which ambulance Wrobleski contended he had a legal right to operate (without a permit from the State of Texas by virtue of the charter of the organization) as Supervisor of the organization that owned it, was legitimate and admissible cross-examination. Appellee contends further that the trial court did not err in requiring Wrobleski to testify on cross-examination about the meeting with Ernest Spencer, colored, the President

of said Club, shortly after the release of Wrobleski, and before Wrobleski reached Zwolle, La., with his wife in the ambulance, because the testimony of Wrobleski on direct examination relative to the route which he took his wife to Zwolle, La., from Marshall, Texas, raised the issue as to these questions asked Wrobleski regarding his stop with Spencer, and raised the question as to whether Mrs. Wrobleski was really ill to any material extent in view of Wrobleski's stopping on his trip to carry his allegedly seriously ill wife to Louisiana for medical treatment, and raised the question as to whether Wrobleski was really as concerned about the condition of his wife as he had previously testified to on direct examination.

■ We are of the view that the cross-examination of Wrobleski complained of by appellants was largely legitimate cross-examination and largely admissible testimony by reason of the matters previously testified to by Wrobleski on direct examination as shown by the record. As to matters which may have been improper or tending to faintly smack of raising any alleged racial prejudice, it is our view that the instructions given by the trial court to the jury (hereinbefore quoted in this opinion) were adequate to take care of the situation, and would render such matters not reversible error under the authorities cited in such cases as Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054; King v. Federal Underwriters, 144 Tex. 531, 191 S.W.2d 855; Culpepper v. Lloyds America, Tex.Civ.App., 140 S.W.2d 330, wr. dis. judg. cor.; South Texas Cotton Oil Co. v. Baugh, Tex.Civ.App., 68 S.W.2d 539; Carson v. Amberson, Tex.Civ.App., 148 S.W.2d 972, 974; Union City Transfer v. Adams, Tex.Civ.App., 248 S.W.2d 256, 257, wr. dis.

■ Whether any of the matters hereinbefore related were reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case are questions which we must determine as a matter of our judgment in the light of the record as a whole. Southwestern Greyhound Lines v. Dickson, 149

**826**

Tex. 599, 236 S.W.2d 115; Rules 434 and 503, Texas Rules of Civil Procedure.

Considering the record as a whole, the factual weakness of appellants' case, the strong preponderance of the evidence supporting the verdict of the jury, the legitimacy and admissibility of the major portion of the cross-examination complained of, and the instructions given to the jury by the trial court hereinbefore quoted, it is our best judgment that none of the matters complained of by appellants were in law reasonably calculated to cause and probably did not cause the rendition of an improper judgment in this cause. Appellants' points are overruled.

The judgment of the trial court is affirmed.