**Manuel R. HURTADO, Petitioner,**

v.

**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Respondent.**

No. B–7583.

Supreme Court of Texas.

Nov. 22, 1978.

Rehearing Denied Dec. 20, 1978.

Putman & Putman, J. Vick Putman and Harold D. Putman, Sr., San Antonio, for petitioner.

Groce, Locke & Hebdon, Ray A. Weed and Thomas H. Crofts, Jr., San Antonio, for respondent.

STEAKLEY, Justice.

Manuel R. Hurtado, our Petitioner, sued for Workers' Compensation benefits. See Tex.Rev.Civ.Stat.Ann. art. 8306, Supp. 1978. He alleged that he is totally incapacitated as a result of injuries he sustained while "getting down from a cherry picker and slipped and twisted [sic] injuring his back and body generally"; further, "that as a result of said injuries, or in the alternative, as a result of said injuries having aggravated and accelerated the pre-existing arthritic condition as well as other physical conditions, plaintiff is totally incapacitated . . . ." The defense of Texas Employers' Insurance Association to the suit of

Hurtado was, as pleaded, that "both prior to and subsequent to the alleged injuries in question Plaintiff suffered from injuries and conditions which were the sole cause of any incapacity he has had or might have at the present time."

Upon trial, the jury found that on the occasion in question Hurtado received an injury in the course of his employment but answered "no" to the issue inquiring whether the injury was a producing cause of any total incapacity. The trial court decreed that Hurtado take nothing. The Court of Civil Appeals, with the Chief Justice dissenting, affirmed this judgment. 563 S.W.2d 360. Hurtado seeks a reversal of the judgments below and a remand of the cause for a new trial. We agree there was error entitling him to this relief.

During the trial, Counsel for TEIA offered into evidence *in the form of four* exhibits the complete medical records pertaining to Hurtado from Memorial Hospital, Uvalde; from Santa Rosa Hospital, San Antonio; from the office of Robert E. Scott, M. D., of Uvalde; and from the office of Karl H. Hempel, M. D., of San Antonio. The exhibits reflected Hurtado's history of health problems with diabetes, rheumatoid arthritis, and a prior back injury, over an extended period of time. They contained 280 pages of medical records, including clinical records, hospital records, nurses' notes, physical examination reports, letters to and from attending doctors, and statements of medical and hospital charges. That which transpired after the offer of the exhibits and their admission in evidence "in total" is reported in nineteen pages of the Statement of Facts. A portion of the original objection of Counsel for Hurtado was this:

MR. PUTMAN: May it please the Court, plaintiff objects to the offer and acceptance of the various hospital records and doctors records into evidence because under the shopbook rule, under Article 37.-37E, [sic] which they are being offered, they are admissible only in those instances to show matters upon which the minds of reasonable men cannot differ, such as diagnoses and the performance of certain clerical tasks, such as giving medicines or taking the temperature or things of this nature which are not in question.

But as far as being offered, they contain matters of hearsay and of a conclusion nature and matters of opinion and they are not admissible.

It is incumbent upon the one offering the records to go through and pick those parts out which he is offering. It is not incumbent upon the Court or upon us to go through and delete the unacceptable and inadmissible portions.

Counsel for Hurtado then enumerated a number of excerpts from the record as examples of their inadmissibility. A portion of the reply of Counsel for TEIA was this:

The only question that we are involved with here is the purpose for which they were introduced, and that is causation, whether it's caused by this or not.

. . . . .

If there is anything objectionable in there that Mr. Putman does not want in there he can take it up with the Court and it can be taken out. We are offering them *primarily*[1] for the purpose of showing that nowhere in these records is there any history of this man having the injury of which he describes.

. . . . .

I don't take the position that in all instances I could do this and the burden would be upon him, but for the purpose of which I offer them, *the major purpose*, is that I offer them so that the entire records be in there. In other words, I am offering them for the purpose of the entire records, the absence of something from the entire records.

Finally, this occurred:

THE COURT: Well, gentlemen, it's a close question but I'm going to overrule your objections to the records as submitted.

---

1. Italics are added throughout.

MR. PUTMAN: What is the Court's ruling, that I have to go through and pick out the inadmissible parts?

THE COURT: I'm saying the whole thing is admissible for the purpose for which he offered them.

MR. PUTMAN: That's as to the hospital records of the Santa Rosa Hospital?

THE COURT: The whole thing.

MR. PUTMAN: I object to the entry of the hospital records of the Uvalde Hospital for the same reasons. Shall I go ahead?

THE COURT: Let's just have the record show that the same objections are leveled at each one of them. As I understand you, Mr. Weed, you are offering all of them for that purpose, the purpose as you've stated?

MR. WEED: Yes, for that purpose. *I am not saying solely for that purpose, but I'm saying it's primarily for that purpose.*

THE COURT: That's the ruling of the Court.

It is noted that TEIA sought admission into evidence of the whole medical records and not particular or specified parts. After reciting that Hurtado vigorously objected to the exhibits because they contained inadmissible letters, notes, opinions, guesses, conjecture and speculative matters, the Court of Civil Appeals stated that the problem is one of determining which party has the burden of separating inadmissible portions of a proffered exhibit from the admissible portions. The Court held that the trial court had discretion in deciding which party should specifically point out to the trial court the objectionable parts of the records and, inferentially, that there was not an abuse of discretion here. Cited was the statement of the rule in *Brown & Root v. Haddad*, 142 Tex. 624, 180 S.W.2d 339 (1944): "A general objection to evidence as a whole, whether it be oral or documentary, which does not point out specifically the portion objected to, is properly overruled if any part of it is admissible." The dissenting Chief Justice was of the view that the attention of the trial court had been specifically called to the inadmissible nature of the medical records; and that there was no justification for the holding that the trial court did not err in ruling that all of the records were admissible. We are in agreement with this view.

It is apparent from our study of the record, portions of which we have quoted above, that it was made clear to the trial court by Counsel for Hurtado that the objections to the medical records went in part to the hearsay, opinion and conclusional matters they contained, illustrative excerpts from which are quoted in the margin.[2] Counsel for Hurtado also pointed the

2. A consultation report of Dr. Walter F. Buell for Dr. Karl H. Hempel, dated January 14, 1974:

This 45 year old man is seen because of proximal leg weakness which he describes as having been present for the past two or three months. . . . He denies change in sensation. He denies injury to the back, except that five years ago while carrying an heavy weight he felt something crack in his back, and since that time has had intermitted back pain. . . . This is very likely a diabetic neuropathy.

A letter from Dr. Karl H. Hempel to Mr. R. H. Friedel of White's Uvalde Mines, dated January 21, 1974:

This gentleman is very ill with several diseases. He has rheumatoid arthritis of 5 year's duration, diabetes mellitus of 8 year's duration. Recently, his diabetes was made much worse, requiring the use of Insulin, because of the administration of corticosteroids in moderate doses. He has subsequently noticed very marked weakening of his thigh muscles so that he can get around only on crutches.

A letter from Mr. Lemuel H. Joiner, Disability Examiner, Texas Rehabilitation Commission, to Dr. Karl H. Hempel, dated January 22, 1974:

Your patient has filed a Social Security claim and requests you send a medical report regarding alleged disability since 1974 due to arthritis and diabetes.

A letter from Dr. Karl H. Hempel to Dr. Robert E. Scott, dated February 5, 1974:

[Manuel Hurtado] has turned out to be a very interesting patient who has a proximal lower extremity neuropathic change with quadriceps atrophy, loss of his reflexes, and weakness so profound that he was unable to rise out of a chair or walk. This was most likely secondary to a combination of etiologies. The first is a lumbar stenosis which was relieved by surgery by Dr. George Livesay on 1–15–74, and diabetes mellitus with neuropathy and also perhaps the corticosteroids.

trial court to a number of examples supportive of his objections. He was not required to examine each of the 280 pages in the voluminous exhibits and segregate the inadmissible items from the admissible items. Even so, TEIA contends that in any event the whole of the records were admissible for the limited purpose of showing the absence of any reference to the injury allegedly sustained by Hurtado upon which his claim of incapacity was predicated. Apart from the fact that the offer of the records in evidence was not so limited—this was stated to be a primary purpose—there was no showing, and it does not appear from the records themselves, that the statements, findings, and opinions contained therein were directed to the question of causation, that is, whether the injury allegedly suffered by Hurtado aggravated his pre-existing condition of arthritis and diabetes. The medical findings appearing in the records pertained to the physical state or condition of Hurtado at the times of the medical examinations, treatments or hospitalization; they were not intended to speak to, or to be determinative of, the question of whether such state or condition was caused or aggravated by Hurtado's alleged injury while at work. Evidence upon the issue of causation is to be offered and received in an admissible manner, including the opportunity of cross-examination of any witness whose statements, opinions or conclusions relate thereto. We further do not agree with the argument of TEIA that the stipulation of the parties obviating the formal proof of the medical records under Tex. Rev.Civ.Stat.Ann. art. 3737e, Supp.1978, removed the records from the infirmities of hearsay and the absence of the opportunity of cross-examination.

■ Finally, TEIA says that even if the admission of the whole records was error, there was no prejudice or harm to Hurtado and did not probably result in the rendition of an improper judgment. As to this, it is asserted that nothing in the records probably persuaded the jury to the verdict adverse to Hurtado. The argument seems to be that Hurtado could not have been harmed by the numerous references in the medical records to the diseases of diabetes and arthritis since his claim of incapacity was based on the aggravation of these pre-existing diseases. We think this misses the point. It was stated in oral argument, as well as in the briefs, and was not disputed, that the medical records were available in the jury room during jury deliberations. Indeed, after the records were admitted in evidence, the Statement of Facts records the following:

[Counsel for TEIA]: At this time we would like to read only a portion of the medical records *which will be available to you for review.* This is a portion of the Santa Rosa Hospital records, which is a history report by Dr. Karl Hempel, attending physician.

Without going into the complaints and other things I am only going to read a portion of it.

"The patient has been treated with numerous medicines, most of them containing corticosteroids and is presently on medrol, sixteen milligrams every other day. He is also taking phenaphen Number 4. He is also taking insulin fifty units qd. He had been taken care of by Dr. Scott in Uvalde, Texas, and has been unable to work for the past several months.

He also notices that his vision has decreased over the past two months and he has nocturia two times per night. He has recently noticed that his vision has decreased and he can't read or watch TV well.

He has presacral pain and pain in his right thigh and it is most noticeable and he relates it all to lifting a," and then

---

A letter from Dr. Walter F. Buell to Dr. Karl H. Hempel, dated February 20, 1974:
I discovered this article, "In Review of Diabetic Neuropathy," and think that it might have some relevance to Mr. Hurtado's case.
.  .  .  . He seems to fit the picture that is described, and according to this one might expect improvement over many months.
It is interesting that many times these neuropathies first are noted shortly after beginning the use of insulin in adult diabetics.

there was a blank, nothing was typed in, "lifting a (blank) beam some three or four years ago and hurting his back."

An inference could have been drawn by the jury from the medical records that the incapacity claimed by Hurtado was entirely attributable to the pre-existing diseases and prior back injury—which no doubt explains why TEIA offered the whole records in the first place—when, as pointed out above, none of the medical findings were directed to the question of an injury-induced incapacity resulting from an aggravation of Hurtado's pre-existing state of health.

The judgments of the courts below are reversed and the cause is remanded to the trial court.