Leonardo RAMIREZ et al., Appellants,

v.

Conan T. WOOD, Sr., et al., Appellees.

No. 1332.

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 14, 1978.

Rehearing Denied Jan. 25, 1979.

L. Aron Pena, William J. Quackenbush, Pena, McDonald, Prestia & Zipp, Edinburg, for appellants.

H. H. Rankin, Jr., Rankin & Kern, McAllen, George P. Powell, Texas Rural Legal Aid, Edinburg, Ralph L. Alexander, Kelly, Looney, Alexander, Edinburg, for appellees.

## OPINION

NYE, Chief Justice.

This is a trespass to try title suit in which the plaintiffs sought to establish title to certain lands in Hidalgo County, Texas, based on the ten year statute of limitations. Tex.Rev.Civ.Stat.Ann. art. 5510 (1958). The cause was submitted to a jury which returned negative answers to the plaintiffs' adverse possession issues. Thereafter, the plaintiffs perfected their appeal to this Court.

282

This consolidated suit concerns numerous tracts of land located in the Los Ejidos de Reynosa Viejo Grant, Hidalgo County, Texas ("the Grant"). The original plaintiffs in this suit, Leonardo Ramirez and his wife, Anita, sought to establish title to and the right of possession to numerous tracts out of the Grant, by adverse possession. Plaintiffs Gregorio Garza and his wife, Cristina, sought to establish their title to a single tract (number 56) of the Grant also through the doctrine of adverse possession.

At trial, it was stipulated by the parties that certain defendants had good and indefeasible record title to various tracts within the Grant. The appellants Ramirez and Garza offered testimony concerning the nature and extent of their respective adverse claims. Several exhibits, charts and maps were introduced as evidence for identity and location of the land in question. In addition, various witnesses testified as to the appellants' possession with reference to specified tract numbers identified by a map of the Grant in question. This evidence will be discussed in more detail below. At the close of the appellants' case, the various defendants moved for an instructed verdict on the basis that neither the Ramirez nor the Garzas had pled or proved their adverse possession claim as to any identifiable and ascertainable land in Hidalgo County, Texas. The trial court overruled the motion. The defendants then rested their respective cases without offering any additional evidence. Special issues were then submitted to the jury which returned negative responses to both the Ramirez' and Garzas' adverse possession issues. We sever the judgment of the trial court as to the two different sets of appellants, and affirm the judgment as to the Ramirez and reverse and remand the case as to the Garzas.

Both appellants' complaints on appeal are, in essence, that: 1) a particular juror was disqualified as a matter of law; 2) the trial court improperly refused to give supplementary instructions to the jury concerning a point of law; 3) the trial court failed to include certain special issues in the charge to the jury; 4) the jury's verdict is contrary to the great weight and prepon-

derance of the evidence; and as to appellant Ramirez, 5) the trial court failed to grant a mistrial after comments were made concerning his criminal record.

Before considering these various points of error, however, we shall first address an argument appellees specifically advance in their "counterpoint." They argue that the trial court should have granted their motion for instructed verdict on the basis that appellants failed to establish, by either pleading or proof, that they had adversely possessed any identifiable and ascertainable land in Hidalgo County as against each or all of the appellees. The appellants had the burden to identify the land they sought to claim by establishing its location, and by showing the extent of their interest in such land. See Jones v. Mid-State Homes, Inc., 163 Tex. 229, 356 S.W.2d 923, 925 (1962); Coleman v. Waddell, 151 Tex. 337, 249 S.W.2d 912, 913 (1952); Smith v. Griffin, 131 Tex. 509, 116 S.W.2d 1064 (1938). The evidence concerning this matter must be considered in the light most favorable to the appellants. The Garzas sought to recover title of tract 56 located in the Los Ejidos de Reynosa Viejo Grant in Hidalgo County, Texas. The stipulations of defendant T. L. Duncan, Jr., (record owner of this tract), utilized the same description of the tract (tract 56), and in addition, supplied an additional reference to a map and plat filed on a certain page in the Hidalgo County Deed Records. Duncan did not specially except to the Garzas' description of the land. Absent such a special exception, appellants Garza sufficiently described the land they claimed to entitle them to introduce proof at trial concerning the location and identity of the land in question. In addition, a certified copy of the official map of the Los Ejidos de Reynosa Viejo survey was introduced into evidence without objection. This map definitely locates tract 56 in relation to other tracts in the same survey and in addition supplies a reference to another recorded document in which a specific metes and bounds description of this tract could be located. An instructed verdict against the

Garzas would have been improper. See *McCall v. Grogan-Cochran Lumber Co.,* 143 Tex. 490, 186 S.W.2d 677, 678–679 (1945); *South Texas Development Co. v. Manning,* 177 S.W. 998 (Tex.Civ.App.—San Antonio 1915, error ref'd); cf. *Trinity River Authority v. Hughes,* 504 S.W.2d 822, 824 (Tex.Civ. App.—Beaumont 1974, writ ref'd n. r. e.).

The land description issue raised by the appellees in reference to the Ramirez' adverse possession claim is more complex. The description of the tracts claimed by the Ramirez in their pleadings was conflicting. In addition, the testimony offered by the Ramirez themselves as to the tracts they enclosed by a fence was also conflicting. They testified they constructed a fence around the property in question in 1953 and thereafter grazed cattle upon the property. Their testimony also suggests that they hired a surveyor who made a survey on the ground of the fence line they allegedly constructed. A copy of the survey is among the papers of this case although it was never introduced into evidence at the trial. Therefore, it cannot be considered. Apparently, the surveyor was not present to testify and Ramirez failed to obtain his testimony through a deposition or through any other permissible means. We conclude that although Ramirez attempted to utilize this survey to plead the description of the land to which they claimed title by limitations, they were actually confused as to the exact tracts that the fence line encompassed as depicted upon the survey. This confusion is apparent when their various pleadings are compared with testimony, diagrams, maps and charts that were actually introduced into evidence.

The appellants Ramirez initially filed suit against defendant Conan T. Wood, Sr., alleging title by adverse possession to: "Tracts of land totaling approximately 265.-75 acres out of Tract 19 (of the Grant)." The total acreage alleged corresponded to the total acreage contained in tract 19 as depicted upon a map introduced into evidence. Appellants' first supplemental petition, however, described the land in question by incorporating a more restrictive description: "A 186.64 Acre Tract out of Tract 19, Los Ejidos de Reynosa Viejo Grant, Hidalgo County, Texas, more particularly described by metes and bounds as follows: (metes and bounds description)." This acreage total and the metes and bounds description corresponded to the total acreage and description contained in the survey (mentioned above) which was never introduced into evidence.

Thereafter, defendant Wood filed a plea in abatement alleging that the metes and bounds description contained in appellants' supplemental petition encompassed lands outside of the boundaries of tract 19 which did not belong to him, but rather, belonged to other parties who were necessary parties in appellants' suit. The trial court granted this plea in abatement and entered an order of consolidation. The Ramirez then filed another supplemental petition which apparently added the Garzas as party plaintiffs, and requested service of process on several additional defendants. This last supplemental petition also described the property in question as: "[t]he tracts and parcels of land situated in Hidalgo County, Texas, which . . . include, in whole or in part, lands from the following tracts in the Los Ejidos de Reynosa Viejo Grant in Hidalgo County, Texas, to-wit: Tracts 19, 18, 46, 56, 57, 59, 65, 66, 67, 68, 69, 70, 71, 72, 75, and 77." Appellants Ramirez did not attempt to supercede any of these property descriptions by filing a later amended petition. The Ramirez' did, however, identify some of the tracts they allegedly constructed fences around as being the same tracts that were located on the map in evidence. This testimony was sufficient to create some fact issues concerning the appellants' possession of ascertainable land. Cf. *Trinity River Authority v. Hughes,* 504 S.W.2d 822, 824 (Tex.Civ.App.—Beaumont 1974, writ ref'd n. r. e.). Since the appellees failed to delineate the evidence concerning each tract and in view of our disposition of Ramirez' claims below, we do not reach the issue of the sufficiency of the proof to the extent of Ramirez' possession of the other tracts in question.

In point of error number one, both sets of appellants complain that the trial court erred by refusing to grant their challenge for cause of Manuel Cantu, a juror, who allegedly had expressed prejudice against adverse possession suits during voir dire. Appellees contend, on the other hand, that the prospective juror, Manuel Cantu, was not disqualified from serving as a juror and that the trial court did not abuse its discretion in denying appellants' challenge.

During the voir dire examination, one of appellants' attorney asked all the prospective jurors the following question:

"Is there any one of you at this time, without hearing the testimony or the evidence and say, 'we would never allow anybody to come on the property and make themselves owners on it? I would never allow that as a juror.' Any of you would feel that way at this time?"

Mr. Cantu answered, "I would." Thereafter, the following exchange took place:

"Q: You don't feel that that should be the law?

A: No.

Q: Mr. Cantu, you have told the Court that you don't feel that this is the law. You would not allow it?

A: I wouldn't.

\* \* \* \* \* \*

Q: Your Honor, based on his answer that he would not be in favor of this situation, I would respectfully move to challenge him for cause at this time.

The Court: I'm not through here. Let me explain these things to these people here. You may be seated, now.

All right. Mr. Cantu, let me clarify something to you. You're not going to be asked, you're not going to be asked whether the land belongs to Mr. Pena's clients or whether the land belongs to anybody else. I will give you in my written charge of the law at the very end of this lawsuit, at the end of the charge, I will submit to you certain questions which I call special issues. For example, 'Do you find from a preponderance of the evidence that the greater weight of the credibility evidence or the belief of evidence, do you find from the evidence,' 'do you see, the Plaintiffs are, for example, were in possession of this tract of land or have been in possession of this tract of land for more than ten years or twenty-five years or whatever number of years.' I will submit that to you and all you have to answer is 'yes' or 'no' without regard to who is going to win and who is going to lose, and I will decide that. Once you have answered my questions, I will decide who I am going to give the land to. Do you understand that?

A: Yes, sir.

The Court: All right. The Court is, under those circumstances, if I give you an oath to follow and that oath says: 'That you will well and truly try the case and a true verdict render according to the law and the evidence so help you God.' That is, would you swear to me that you will listen to the evidence, follow the law as I give it to you, and answer my questions. Can you do that, sir?

Mr. Cantu: Yes, sir."

Based on this response, the Court rejected appellants' challenge for cause and Mr. Cantu served as one of the jurors.

Section 4 of Article 2134, Tex.Rev.Civ. Stat.Ann. (1964) provides that a person is disqualified from serving as a juror if he ". . . has a bias or prejudice in favor of or against either of the parties." The disqualification for bias or prejudice within the meaning of this section includes bias or prejudice against the subject matter of the litigation. *Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex.1963); *Houston & T. C. Ry. Co. v. Terrell*, 69 Tex. 650, 7 S.W. 670 (1888).

In defining the terms "bias" and "prejudice," our Supreme Court in *Compton v.*

*Henrie,* 364 S.W.2d 179, 182 (Tex.1963), stated as follows:

"Bias, in its usual meaning, is an inclination toward one side of an issue rather than to the other, but to disqualify, it must appear that the state of mind of the juror leads to the natural inference that he will not or did not act with impartiality. Prejudice is more easily defined for it means prejudgment, and consequently embraces bias; the converse is not true. The establishment of such a state of mind would disqualify [a prospective juror] from serving on this jury as a matter of law. It is only where there are grounds for disqualification other than those provided for in the statute that the discretionary powers of the trial judge may be exercised, for a disqualification under Article 2134 does not involve a matter of discretion, but a matter of law."

Bias or prejudice is an intangible factor. Naturally situations may arise under which a factual finding, on the basis of such intangibles must be made as to whether the prospective juror is, in fact, biased or prejudiced. Under these circumstances, the trial court must make that fact finding. His overruling a challenge for cause to the prospective juror carries with it an implied finding that there exists no such bias or prejudice as to constitute a disqualification. That fact finding will not be disturbed in the absence of an abuse of discretion. *Swap Shop v. Fortune,* 365 S.W.2d 151 (Tex. 1963); *Ratcliff v. Bruce,* 423 S.W.2d 614, 616 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.), cert. den. 393 U.S. 848, 956, 89 S.Ct. 134, 373, 21 L.Ed.2d 118, 369 (1968); *Bashrum v. Vinson,* 330 S.W.2d 538 (Tex.Civ.App.—Houston 1959, writ ref'd n. r. e.).

The trial court did not abuse its discretion in impliedly finding that Cantu was not a biased or prejudiced juror. Cantu's answer to appellants' general question indicated a concern for the sanctity of landownership as against anyone who sought to establish title by merely coming onto the land. It did not establish bias or prejudice as a matter of law. Appellants' attorney failed to further test Mr. Cantu's original response by adding any variables to restrict his previous general and unconditional question. Clearly, under the laws of adverse possession, a claimant cannot become the owner of property by merely "com[ing] on the property." Appellants' point of error number one is overruled.

██ The appellants also complain that the trial court erred in failing to include in its charge certain ᵣequested special issues. The special issues requested by appellants Ramirez were as follows:

"1. Do you find from a preponderance of the evidence that Plaintiffs Leonardo Ramirez and wife, Anita C. Ramirez, held exclusive, peaceable and adverse possession, under a claim of right of *all* of Tracts Fifty-Seven (57), Fifty-Eight (58), Fifty-Nine (59), Sixty-Five (65), Sixty-Six (66), Sixty-Seven (67), Sixty-Eight (68), Sixty-Nine (69), Seventy-One (71), Seventy-Two (72), and Seventy-Five (75), Los Ejidos de Reynosa Viejos Grant in Hidalgo County, Texas, using or enjoying the same for any period of ten (10) years or longer prior to September 4, 1974? Answer 'Yes' or 'No.' (Emphasis added).

2. Do you find from a preponderance of the evidence in this cause that Plaintiffs Leonardo Ramirez and wife, Anita C. Ramirez, held exclusive, peaceable and adverse possession, under a claim of right of 186.64 acres of land out of Tract Nineteen (19), Los Ejidos de Reynosa Viejos Grant in Hidalgo County, Texas, using or enjoying the same for any period of ten (10) years or longer prior to September 4, 1974? Answer 'Yes' or 'No.' "

The trial court refused to submit these special issues and, instead, in special issue number one requested the jury, in essence, to determine first whether appellants Ramirez had adversely possessed *"certain lands, if any"*, for a period of ten years prior to September 6, 1974. Special issue number two was conditionally submitted upon an affirmative answer to special issue number one and requested the jury to describe the land so adversely possessed. Similar special issues were submitted as to the Garzas' adverse possession claim.

The appellants contend that the special issues as submitted to the jury in the court's charge imposed an unreasonable burden upon the jury because the jury was requested to identify and to describe the land, if any, that the appellants had adversely possessed. Appellees, on the other hand, contend, in effect, that the appellants' complaints were rendered immaterial by the jury's failure to find that either appellants had adversely possessed any land. We agree with this latter argument.

We do not approve of the manner in which these special issues were submitted to the jury. Undoubtedly, the special issues were submitted in this manner due to the confusing pleadings and proof above discussed concerning the land actually fenced and possessed by the appellants Ramirez. Perhaps, in the conditionally submitted issues, the trial court should have supplied the missing description by tract number and then allowed the jury to select which ones, if any, had been adversely possessed. While we tend to agree that the submission of the issues which requested the jury to furnish a description of the land adversely possessed placed an undue burden upon the jury, the jury's negative answer to the initial adverse possession special issue rendered the error harmless in this case. See *Spring Branch Indep. School Dist. v. Lilly White Church,* 505 S.W.2d 620, 624 (Tex. Civ.App.—Houston [1st Dist.] 1973, no writ); Rule 434, T.R.C.P.

 In addition, a litigant who wants the trial court to submit to the jury a particular special issue upon which he relies to establish his right to recover, must tender the issue in writing in substantially correct wording to the trial judge in order to complain on appeal. Rule 299, T.R.C.P. This, Ramirez failed to do. The trial court properly refused to submit the special issues requested by the Ramirez.

 It should also be pointed out that the parties stipulated that Sofia C. Gomez had good and indefeasible title to 3.885 acres of land *out of* tracts 71 and 72. It is evident to us from an examination of the official map that tracts 71 and 72 con-

tained 31 acres. The stipulation accounts for a portion of these two tracts. However, the record owners of the remaining acres in these two tracts apparently were not made parties defendant to this suit. It is axiomatic that a judgment in a trespass to try title suit which attempts to adjudicate title to and possession of lands would not be binding on any person who was not a party to such suit. *Adams v. Duncan,* 147 Tex. 332, 215 S.W.2d 599 (1948); *Granberry v. Dallas,* 250 S.W.2d 643 (Tex.Civ.App.—Dallas 1952, writ ref'd n. r. e.); *Kirby Lumber Corp. v. Southern Lumber Co.,* 145 Tex. 151, 196 S.W.2d 387 (1946). The trial court also correctly refused to submit the second special issue requested by appellants Ramirez. This issue concerned Ramirez' adverse possession claim to tract 19 alone. However, appellants Ramirez admitted during the course of trial they did not possess all of this tract. Appellants' point of error four is overruled.

 In point of error number two, the appellants complain that the trial court erred by refusing to give the jury further instructions after they had commenced deliberations as to the definition of adverse possession.

The court in its charge to the jury instructed the jury as follows:

"Our law provides that a person may acquire title to land by exclusive, peaceable and adverse possession thereof, cultivating, using or enjoying the same for any period of ten (10) years or more.

'EXCLUSIVE POSSESSION' means an exclusive dominion over the land and an appropriation of it to the claimant's use and benefit.

'PEACEABLE POSSESSION' is such possession as it is continuous and not interrupted by adverse suit to recover the land during the said period of ten (10) years or more.

'ADVERSE POSSESSION' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claims of another.

'CLAIM OF RIGHT' means an intention to claim the land as one's own."

During the jury's deliberations, the foreman of the jury sent the following written questions to the court:

"Could you please clearify (sic) for us the definition of adverse possession? Does he have to verbally claim it to the title holders or can he simply verbally claim it to anyone?"

The appellants requested the court to tender the following written instruction to the jury:

"In connection with your inquiry for clarification of the Court's definition of adverse possession, whether actual notice must be given to record owners of the property involved, you are further instructed that actual notice is not required to be given to record owners of such properties."

The court refused to submit the tendered instruction to the jury and instead, made the following written reply to the jury's question: "The law is given to you as in the Court's charge."

Rule 287, Texas Rules of Civil Procedure, provides to the effect that the jury may receive further instructions of the court touching on any matter of law, either at their request or upon the court's own motion.

The appellants had not objected to the trial court's definition of adverse possession and did not request an additional instruction prior to the time the charge was submitted to the jury. The definition of "adverse possession" contained in the court's charge follows the Legislature's definition of that term contained in Tex.Rev.Civ.Stat. Ann. art. 5515 (1958). See *Pinchback v. Hockless,* 138 Tex. 306, 158 S.W.2d 997 (1942). The jury's request for clarification of the definition of adverse possession concerned the "claim of right" portion of that definition. There is nothing in the "claim of right" definition that suggests that the claimant must verbally claim title to anyone. If there is no verbal assertion of claim to the land brought to the knowledge of the landowner, the adverse possession must be

so open and notorious and manifested by such open or visible act or acts that knowledge on the part of the landowner will be presumed. *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781, 787 (1954); *Winchester v. Porretto,* 432 S.W.2d 170 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ ref'd n. r. e.). We conclude that the instruction and definition of adverse possession as submitted by the trial court was in substantially correct form.

 Ramirez and Garza each sought to establish their title to the land in question pursuant to the ten year statute of limitations, Tex.Rev.Civ.Stat.Ann. art. 5510 (1958). Appellants had the burden to plead and prove each of the statutory requirements by a preponderance of the evidence in order to prevail on their adverse possession claims. Such proof must be clear and satisfactory. *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781, 787 (1954); *Holstein v. Adams,* 72 Tex. 485, 10 S.W. 560 (1889); *Champion Paper & Fibre Co. v. Wooding,* 321 S.W.2d 127 (Tex.Civ. App.—Waco 1959, writ ref'd n. r. e.). Under the ten year statute, it is incumbent upon a claimant to show affirmatively: 1) possession of the land; 2) cultivation, use, or enjoyment thereof; 3) an adverse or hostile claim; and 4) an exclusive domination over the property and an appropriation of it for his own use and benefit for the statutory period. Tex.Rev.Civ.Stat.Ann. art. 5510 (1958); 2 Tex.Jur.2d, Adverse Possession, § 222 pp. 367–68 (1959); and authorities cited therein. In response to special issue number one, the jury did not find that the Ramirez had perfected their claim of adverse possession. The jury also returned a negative finding in special issue number four which made a similar inquiry regarding the Garzas' adverse possession claim. The remaining special issues were conditionally submitted upon affirmative answers to these special issues and, therefore, remained unanswered. Appellants Ramirez and Garza each complain that the "verdict of the jury is contrary to the great weight of the evidence." We, therefore, examine the entire record in this case in

accordance with the rules set forth in *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

The jury's response to special issue number one relating to the Ramirez claim is not against the great weight and preponderance of the evidence. The Ramirez' adverse possession claim was predicated upon the use of the land for grazing cattle within a fence they allegedly built enclosing the particular identifiable land they claimed.

An adverse claimant who relies upon grazing as the only evidence of his adverse use and enjoyment must show as a part of his case that the land in dispute was designedly enclosed so as to show the asserting of a claim that is hostile to the owner. *McDonnold v. Weinacht,* 465 S.W.2d 136, 141–142 (Tex.1971); *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781 (1954). The testimony concerning this issue was disputed. First, who actually constructed the fences was in sharp conflict. The testimony of Ramirez was to the effect that they constructed all of the fences in question. On the other hand, appellee Wood, called by the appellants as an adverse witness, testified that he was the one who constructed all of the fences. The Ramirez gave conflicting testimony as to their original purpose for constructing the fence. Their testimony strongly suggested a "casual enclosure" which is not sufficient to support a claim of adverse possession. See *McDonnold v. Weinacht,* 465 S.W.2d 136, 141–142 (Tex.1971); *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781 (1954).

Closely associated to the principle of casual enclosure is the question of the presence or absence of the essential hostile claim or "claim of right." Naked possession unaccompanied by a "claim of right," i. e., an intent on the part of the occupant to claim the land as his own, will not commence the running of the limitations period. *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781, 787 (1954). The evidence pertaining to this vital issue is also in sharp conflict. Both Mr. and Mrs. Ramirez admitted that they did not intend to claim as their own any of the land in question until sometime in 1973. This change in attitude occurred after discussing their ownership possibilities with other relatives. This testimony directly conflicts with their previous testimony which was to the effect that in 1953 when they built the fence they intended to claim the land as their own.

There were other conflicts apparent in the record as they relate to the essential elements necessary to establish the Ramirez' title by limitations. The conflicts inherent in appellants' (Ramirez) own testimony support our conclusion that the jury's answer to special issue number one was not against the great weight and preponderance of the evidence.

Appellant Garza testified that he had grown up in the home located on tract 54 and had lived there all of his life (approximately seventy-seven years); that approximately fifty years ago, his father had constructed a fence that surrounded both tracts 54 and 56; and that since his father's death forty years earlier, Garza had claimed lot 56 as his own. Garza further testified he used lot 56 for farming purposes ever since the time his father died. Garza's mother died approximately five years after the death of his father. The evidence indicates Garza had used tract 56 continuously, openly and exclusively for some fifty-five years prior to the time this suit was filed.

The origination of Garza's claim to tract 56 caused some confusion at the trial. Garza testified: 1) that his father had given tract 56 to him; or 2) that he had inherited the property from his father who had died intestate, and without administration of his estate. Although Garza had several siblings, he testified that most of them were dead and that none of them had ever claimed lot 56.

Garza's testimony raises the question of whether he was relying upon a perfected limitations title in his father or relying upon establishing his own limitations title to the land in question. At trial, appellees argued that since Garza had testified that

he had inherited the property intestate from his father and since he had siblings, that Garza could not claim the entire tract 56 as his own. If Garza's father established a limitations title to tract 56, then title to tract 56 passed to his heirs at the time he died. See *Davis v. Breithaupt,* 400 S.W.2d 390 (Tex.Civ.App.—Austin 1966, writ ref'd n. r. e.); *Salinas v. Gutierrez,* 341 S.W.2d 558 (Tex.Civ.App.—San Antonio 1960, writ ref'd n. r. e.); *Chittim v. Auld,* 219 S.W.2d 702 (Tex.Civ.App.—San Antonio 1949, writ ref'd n. r. e.). On the other hand, if Garza's father did not acquire title to tract 56 by limitations, there is ample evidence in the record that appellant Garza acquired title to tract 56 by limitations on his own behalf.

We have reviewed the entire record concerning the jury's response to the adverse possession issue of appellants Garza. We hold this answer is so against the great weight and preponderance of the evidence as to be manifestly unjust. The evidence concerning the Garzas' adverse claim is virtually undisputed, and, as previously mentioned, the defendants offered no independent rebuttal testimony.

 The remaining point of error is brought forward only by the appellants Ramirez. Although this point of error attacks certain alleged and unspecified "comments by counsel for defendants," the general arguments under this point of error suggest that the appellants intend to attack the trial court's action in admitting certain testimony and its alleged failure thereafter to "properly instruct the jury" to disregard such evidence.

The rule of "presumed prejudice" no longer prevails in Texas. *Walker v. Texas Employers Ins. Assoc.,* 155 Tex. 617, 291 S.W.2d 298 (1956). Rules 434, 503, Texas Rules of Civil Procedure. When the appellant complains that the trial court improperly admitted certain evidence, he has the appellate burden to affirmatively show: 1) that the trial court erred by admitting the evidence; and 2) that such error was reasonably calculated to and probably did cause the rendition of an improper judgment. *Colonial Life & Accident Ins. Co. v.*

*Squyres,* 550 S.W.2d 413 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); *Best Steel Bldgs., Inc. v. Hardin,* 553 S.W.2d 122 (Tex.Civ.App.—Tyler 1977, writ ref'd n. r. e.). On appeal, we are required to review the entire record and grant a reversal only if we are convinced that a different verdict would have been rendered but for the error. *Schwab v. County of Bexar,* 366 S.W.2d 952 (Tex.Civ.App.—San Antonio 1963, writ ref'd n. r. e.); *Flores v. Missouri-Kansas-Texas Railroad Co.,* 365 S.W.2d 379 (Tex.Civ.App.—Dallas 1963, writ ref'd n. r. e.); *Wrobleski v. Coleman,* 283 S.W.2d 822 (Tex.Civ.App.—Texarkana 1955, no writ).

On cross-examination, Mrs. Ramirez admitted, in effect, that her husband was not present on the property for the years 1968 to 1973 because he was in the penitentiary for this time period. The question leading to her answer was objected to on the ground that it was prejudicial and immaterial. The objection was overruled and prior to her answer, appellants' counsel requested "the Court to make a special instruction at this time about the purpose of this evidence."

The absence of Mr. Ramirez from the property in question during the very time appellants claimed title by limitations was relevant to the issue of adverse possession. The absence of Mr. Ramirez rendered the acts of Mrs. Ramirez relative to the property in question controlling in determining whether all of the necessary elements of adverse possession were present during this particular time period. The fact that Mr. Ramirez was incarcerated, however, would appear to be objectionable.

Where the proffered evidence is admissible only in part, the trial court does not commit reversible error in admitting the evidence in its entirety if the objecting party fails to properly object to the inadmissible portion. *Brown & Root, Inc. v. Haddad,* 142 Tex. 624, 180 S.W.2d 339, 341 (1944); cf. *Hurtago v. Texas Employers Ins. Assoc.,* 574 S.W.2d 536 (Tex.1978). It is incumbent upon the objecting party to make a specific objection to the inadmissible portion and

then request a limiting instruction. *Forrest v. Moreno,* 161 S.W.2d 364, 365 (Tex.Civ. App.—San Antonio 1942, writ ref'd). This was not done.

Outside of the jury's presence, the appellees' attorney obtained permission to impeach Mr. Ramirez' testimony by eliciting testimony that he was convicted of the crime of murder with malice. The trial court held that this evidence would be admissible for impeachment purposes only on the basis that Mr. Ramirez was convicted of a crime involving moral turpitude. Subsequently, Mr. Ramirez was asked whether or not it was true that he had been convicted of a crime of murder with malice and his attorney objected generally to this question on the basis that the requested testimony would be immaterial, irrelevant, inflammatory and prejudicial. These general objections were overruled and Mr. Ramirez gave an affirmative response.

In Texas, where a witness has been legally charged and convicted of a crime involving moral turpitude, such evidence of the conviction is admissible in evidence as touching on his credibility as a witness. See *Compton v. Jay,* 389 S.W.2d 639, 641 (Tex.1965). Appellants do not contend that Ramirez' conviction does not fall within this rule. Appellants do contend that the following exchange occurring after Ramirez admitted his conviction created reversible error:

"Q: All right. When did you go out, when did you go out from the penitentiary?
A: I believe it was on April 26 or 24th, something like that.
Q: Of 1973?
A: '73.
Q: All right. And were you released on parole?
A: On parole.
Q: And your sentence was twenty years?
The Court: Don't go into that.
(Appellants' attorney): Excuse me, I object to that.
The Court: Don't go into any of that evidence, sir.

(Appellants' attorney): We ask that the jury be instructed not to consider the question of (appellees' attorney), please.
The Court: All right. At this time the Court is going to instruct the jury not to consider any comment by (appellees' attorney) on the term of penitentiary of twenty years or any other such information. You are to disregard that entirely from your minds. Do not consider it for any purpose whatsoever. Do not let that statement prejudice you in this particular case."

Appellants' motion for mistrial was overruled.

The main thrust of appellants' contention, as we understand it, is that the final question above propounded by appellees' attorney was so prejudicial that Mr. Ramirez' failure to answer it and the trial court's subsequent instruction to disregard the comment was insufficient to cure such prejudicial effect. We do not agree.

Generally, unanswered questions, even as to improper matters, do not constitute reversible error. *Firestone Tire & Rubber Co. v. Rhodes,* 256 S.W.2d 448 (Tex.Civ.App.— Austin 1953, writ ref'd n. r. e.); *J. H. Hubbard & Son v. Greer,* 255 S.W.2d 389 (Tex. Civ.App.—Austin 1953, no writ); *Gragg v. Williams,* 310 S.W.2d 394 (Tex.Civ.App.— Fort Worth 1958, no writ); *Hernandez v. H. S. Anderson Trucking Co.,* 370 S.W.2d 909 (Tex.Civ.App.—Beaumont 1963, writ ref'd n. r. e.). This is particularly true here, where the trial judge immediately issued an instruction that the jury disregard the comment. The trial judge properly instructed the jury in this instance. Even if it was error, the appellants have failed to show that such error was reasonably calculated to cause and did cause the rendition of an improper judgment. Rule 434, T.R.C.P. Appellants' point of error three is overruled.

The judgment of the trial court is severed as to the adverse possession claim of appellants Garza pertaining to tract 56. This portion of the judgment is hereby reversed and such cause is remanded for a new trial. The remaining portion of the trial court's

take nothing judgment as to appellants Ramirez is affirmed. One half of the costs are assessed against appellants Ramirez and the other half is assessed against the appellees.

REVERSED AND CAUSE REMANDED IN PART, AND AFFIRMED IN PART.